STATE OF NORTH CAROLINA v. CARL STEPHEN MOSELEY

No. 124A93

(Filed 3 November 1994)

**1. Criminal Law § 78 (NCI4th)— murder and rape—pretrial publicity—change of venue denied**

The trial court did not err in a prosecution in which defendant was convicted of first-degree murder, first-degree sexual offense, and first-degree rape by denying defendant's motion for a change of venue where defendant contended that he could not receive a fair trial in Stokes County because of extensive media coverage of this case and an earlier trial in Forsyth County. The affidavits submitted in the record on appeal indicate only that one television station covered developments in defendant's Forsyth County trial approximately fifty times and that the other station covered developments eleven times; the affidavits do not suggest in any way that the televised coverage of defendant's cases was inflammatory; the bulk of the newspaper articles submitted by defendant were factually based and expressed no opinions regarding defendant's guilt or innocence; the State put on credible evidence in rebuttal of defendant's claims of prejudicial media coverage; and the transcript further shows that each juror during *voir dire* unequivocally stated that he or she could put aside anything read, seen, or heard about defendant and that he or she would decide defendant's case solely upon the evidence presented in the courtroom.

**Am Jur 2d, Criminal Law § 378.**

1

Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.

2. **Indigent Persons § 21 (NCI4th)— murder and rape— appointment of pathologist denied—insufficient showing of particularized need**

The trial court did not err in a prosecution for first-degree murder, first-degree rape, and first-degree sexual offense by denying defendant's motion for funds to employ a pathologist to assist in his defense where the pathologist who had performed the autopsy in this case in Stokes County also supervised an autopsy in Forsyth County and testified in the Forsyth County case as to the similarities between the·two cases. Defendant failed to demonstrate that the assistance of a pathologist would have materially aided him in the preparation of his defense or that the lack thereof deprived him of a fair trial in that the record, the transcripts, the slides, and the photographs at issue reveal that the similarities between the location and types of wounds of the two victims are obvious and self-explanatory even to the ordinary lay juror, there was substantial additional evidence that demonstrated the similarities between the two crimes from which the jury could find that they were committed by the same person, and defendant did not demonstrate that a pathologist could have added anything to his defense. Moreover, the conclusion that both victims sustained torture wounds and were subjected to overkill was also readily apparent to a lay juror upon viewing the evidence and, although defendant contended that an expert was necessary to provide an opinion concerning the time of death of the victims, that was not a material issue in this case.

**Am Jur 2d, Criminal Law §§ 771, 1006.**

**Right of indigent defendant in criminal case to aid of state by appointment of investigator or expert. 34 ALR3d 1256.**

3. **Jury § 203 (NCI4th)— murder and rape—jury selection— questions concerning publicity—restricted—no abuse of discretion**

The trial court did not err in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense by limiting the scope of defendant's *voir dire* questions concerning the extent of jury exposure to pre-

trial publicity and the content of the information heard by the jurors. *Morgan v. Illinois*, 119 L. Ed. 2d 492, does not create a constitutional right to ask *voir dire* questions about the specifics of juror exposure to pretrial publicity and the content of that publicity and a careful review of the record reveals that the trial court did not abuse its discretion in that all prospective jurors unequivocally indicated that they had neither formed nor expressed any opinion of defendant's guilt or innocence as a result of pretrial publicity and that they were certain they could disregard entirely anything they had heard or read about the case and decide the verdict solely on the evidence presented.

**Am Jur 2d, Jury §§ 201, 202, 279 et seq., 294 et seq.**

### 4. Jury § 205 (NCI4th)— first-degree murder—jury selection—neighbor of victim

The trial court did not abuse its discretion in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense by limiting defendant's *voir dire* of a prospective juror who had indicated that he was a neighbor of the victim's family. Defendant was not prohibited from eliciting information that would have disqualified the juror and the juror stated that he could decide the case solely on the evidence presented, that he could disregard any prior information, and that his prior knowledge of the case would not make rendering a decision solely on the evidence difficult.

**Am Jur 2d, Jury §§ 313 et seq.**

### 5. Jury § 183 (NCI4th)— first-degree murder—jury selection—challenges for cause

The trial court did not err in a trial in which defendant was convicted of a first-degree murder, first-degree rape, and first-degree sexual offense in failing to excuse prospective jurors for cause where defendant contended that answers on *voir dire* revealed that jurors held views that would substantially impair their ability to follow the jury instructions and the law. Defendant did not object to any jurors after exercising his last peremptory challenge nor did he renew his challenge for cause against prospective juror Slate, but instead asked for additional peremptory challenges or to be allowed to use one of the peremptories allotted for selection of alternates and failed to preserve any error for appeal by failing to comply with the procedure made mandatory by the statute. Moreover, defendant did not establish

that Slate's views on capital punishment would substantially impair the performance of his duties as a juror. N.C.G.S. § 15A-1214.

**Am Jur 2d, Jury §§ 213 et seq.**

6. **Jury §§ 202, 215 (NCI4th)— first-degree murder—jury selection—knowledge of previous trial—belief in capital punishment**

The trial court did not abuse its discretion in a prosecution in which defendant was convicted for first-degree murder, first-degree rape, and first-degree sexual offense by not excusing two prospective jurors for cause on its own motion where a prospective juror recalled seeing in the paper that defendant had previously been tried in Forsyth County but indicated that he had formed no opinion of this case and could disregard any information he had previously obtained and decide the case solely on the evidence presented, and another prospective juror initially indicated that he would vote for the death penalty if the jury found defendant guilty, but indicated that he could follow the law after it was explained by the judge.

**Am Jur 2d, Jury §§ 279 et seq., 289, 290, 294 et seq.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

7. **Criminal Law §§ 423, 465 (NCI4th)— first-degree murder— prosecutor's closing arguments—reasonable doubt and presumption of innocence—failure of defense to present witnesses**

The trial court did not err in a prosecution in which defendant was convicted for first-degree murder, first-degree rape, and first-degree sexual offense by refusing to intervene *ex mero motu* during the prosecutor's closing arguments at the guilt-innocence phase where defendant contended that the prosecutor impermissibly defined reasonable doubt and the presumption of innocence and repeatedly referred to the State's evidence as being uncontradicted and to the failure of the defense to present any witnesses.

**Am Jur 2d, Trial §§ 605 et seq., 640 et seq.**

**Counsel's right in criminal prosecution to argue law or to read lawbooks to the jury. 67 ALR2d 245.**

**8. Evidence and Witnesses § 213 (NCI4th)— first-degree murder—defendant dancing at club with victim prior to crime—relevant—not prejudicial**

The trial court did not err in a prosecution in which defendant was convicted for first-degree murder, first-degree rape, and first-degree sexual offense by allowing a witness to testify that he contacted law enforcement officers after seeing on television that defendant had been charged with another murder to say that he had seen defendant dancing with the victim on the night she disappeared at the same club from which the other victim had disappeared. The testimony was relevant to explain why the witness did not contact the police until three months after the murder and to explain why he ultimately recognized defendant, rather than for the improper purpose of demonstrating defendant's character. The evidence was not unfairly prejudicial in that extensive evidence of the other murder was admitted and there was considerable additional evidence linking defendant to this victim. N.C.G.S. § 8C-1, Rules 404 and 403.

**Am Jur 2d, Evidence §§ 363 et seq.**

**9. Evidence and Witnesses § 116 (NCI4th)— first-degree murder—evidence of guilt of another—speculation and conjecture**

The trial court did not err in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense by refusing to admit testimony that the victim was assaulted by someone other than defendant on the night she was murdered where the excluded testimony cannot be said to give rise to more than mere speculation and conjecture of another's guilt.

**Am Jur 2d, Evidence § 587.**

**10. Evidence and Witnesses § 2211 (NCI4th)— murder and rape—DNA testing—exclusion of others**

The trial court did not err in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense by allowing an SBI serologist to testify that DNA testing excluded two individuals as donors of the semen found in the victim where the agent testified that DNA samples were taken from the victim's former boyfriend, her friend's boyfriend, and defendant, that DNA analysis excluded the

other two men, and that defendant's DNA profile matched on five of the six autorads analyzed. DNA analysis provides direct evidence that defendant was the source of the semen found in the victim's body and the State did not offer the DNA analysis for the proposition that defendant is established as the perpetrator by excluding others.

**Am Jur 2d, Expert and Opinion Evidence § 300.**

**Admissibility, in prosecution for sex-related offense, of results of tests on semen or seminal fluids. 75 ALR4th 897.**

**Admissibility of DNA identification evidence. 84 ALR4th 313.**

11. **Evidence and Witnesses § 1070 (NCI4th)— flight—evidence sufficient**

There was sufficient evidence in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense to instruct the jury on flight where defendant did not object or allege plain error, but the merits of the issue were considered under a plain error analysis and the jury could reasonably infer flight from the evidence that defendant left the victim's naked body in a dark, secluded rural area; removed her clothing and jewelry to delay identification; left the scene; and was not apprehended until more than three months later, efforts which indicate an attempt by defendant to evade detection and capture.

**Am Jur 2d, Evidence §§ 532 et seq.**

12. **Appeal and Error § 490 (NCI4th)— murder—prior offense—findings of fact—supported by the evidence**

The findings of the trial court as to admission of another offense were binding when they were clearly supported by plenary competent evidence.

**Am Jur 2d, Appeal and Error §§ 818, 819.**

13. **Evidence and Witnesses § 318 (NCI4th)— murder—evidence of another murder—identity, plan, and common modus operandi—probative value not outweighed by prejudice**

The trial court did not err in a prosecution which resulted in convictions for first-degree murder, first-degree rape, and first-

degree sexual offense by admitting evidence of another murder of which defendant was convicted where defendant contended that the probative value of the evidence was substantially diminished and substantially outweighed by the danger of unfair prejudice, but the evidence was highly probative of the identity of the murderer and of the existence of a plan and common *modus operandi* and the trial court repeatedly gave limiting instructions to the jury. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Homicide § 312.**

14. **Evidence and Witnesses § 1693 (NCI4th)— murder—photographs of victims—admissible**

The trial court did not abuse its discretion in a prosecution which resulted in convictions for first-degree murder, first-degree rape, and first-degree sexual offense by admitting photographs and slides into evidence during the guilt-innocence phase and the sentencing phase where there was no evidence that the photographs were used excessively and solely to arouse the passions of the jury. The photographs of this victim, and the victim from another trial where defendant was also convicted, including photographs of their genitalia, were introduced to illustrate the theory that both victims were killed by the same person and that that person was defendant.

**Am Jur 2d, Evidence § 974; Homicide §§ 417 et seq.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

15. **Criminal Law § 467 (NCI4th)— murder—closing arguments—prosecutor's use of photographs**

There was no error in a prosecution which resulted in convictions for first-degree murder, first-degree rape, and first-degree sexual offense by allowing prosecutors to use photographs of this victim and the victim in another trial during the closing arguments in the guilt-innocence phase and the sentencing phase where defendant did not object and the arguments were not so grossly improper as to constitute a denial of defendant's due process rights.

**Am Jur 2d, Trial §§ 505 et seq.**

**Admissibility of visual recording of event or matter giving rise to litigation or prosecution. 41 ALR4th 812.**

Admissibility of visual recording of event or matter other than that giving rise to litigation or prosecution. 41 ALR4th 877.

16. **Evidence and Witnesses § 1693 (NCI4th)— murder—photographs of victims—sentencing phase**

There was no plain error in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense in the trial court's failure to give a limiting instruction during the sentencing hearing on the use of photographs of the victim in another trial in which defendant was also convicted where the evidence had been properly admitted. The jury is properly permitted to consider all the evidence presented during the guilt-innocence phase and it was appropriate for the jury to consider the evidence in finding the course of conduct aggravating circumstance.

Am Jur 2d, Evidence § 974; Homicide §§ 417 et seq.

Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.

17. **Evidence and Witnesses § 370 (NCI4th)— murder and rape—testimony of defendant's ex-wife regarding sexual acts—admissible**

The trial court did not err in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense by admitting the testimony of defendant's ex-wife that defendant had anally assaulted her during their marriage where, although there are dissimilarities, the similarities tend to support a reasonable inference that defendant committed the assaults on both women and the probative value of the similarities was sufficient to outweigh the risk of unfair prejudice to defendant.

Am Jur 2d, Evidence §§ 435 et seq.; Rape § 71.

Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 77 ALR2d 841.

Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offenses. 88 ALR3d 8.

**18. Evidence and Witnesses § 353 (NCI4th)— murder and rape—evidence of another offense—admissible as to motive**

The trial court did not err in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense by admitting testimony of defendant's prior sexual assault on another victim where the trial court found from the uncontradicted evidence that the attacks bore several similarities; there were sufficient similarities to support a reasonable inference that the same persons committed both acts; the occurrences were not so temporally remote as to diminish the probative value of the evidence; the admission of prior acts tending to show motive is clearly supported by N.C.G.S. § 8C-1, Rule 404(b) and our case law; and this testimony showed that defendant knew from his past experience that his crime would be reported and that he would suffer the consequences if he left his victim alive.

**Am Jur 2d, Evidence §§ 435 et seq.; Rape § 71.**

**Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 77 ALR2d 841.**

**Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offenses. 88 ALR3d 8.**

**19. Evidence and Witnesses § 2264 (NCI4th)— murder—opinion of pathologist—torture and overkill**

The trial court did not err in a prosecution in which defendant was convicted of first-degree murder, first-degree rape, and first-degree sexual offense by allowing the pathologist who performed the autopsy of the victim in another trial in which defendant was also convicted to testify that that victim's wounds were torture wounds and characteristic of overkill. The pathologist did not testify that the victim had been tortured, merely that her wounds were consistent with torture, and did not testify that defendant had inflicted the wounds, merely that the wounds were consistent with overkill. Finally, the testimony was relevant in that the injuries sustained by both victims were remarkably similar and an FBI agent testified that overkill was the signature present in both murders.

**Am Jur 2d, Expert and Opinion Evidence § 244.**

20. **Rape and Allied Offenses § 147 (NCI4th)— first-degree rape and murder—lack of consent—sufficiency of evidence**

The trial court did not err by failing to dismiss a first-degree rape charge where defendant conceded that the pathologist found sperm in the victim's vagina but defendant contended that the evidence showed that the victim left a club voluntarily with defendant and that, absent evidence of forcible abduction, the subsequent murder of the victim raises no more than a conjecture that any sexual conduct was nonconsensual. However, there was evidence that the victim was beaten while she was alive and the jury could reasonably infer that she was forced to have sexual intercourse against her will.

**Am Jur 2d, Rape §§ 88 et seq.**

21. **Criminal Law § 452 (NCI4th)— first-degree murder—sentencing hearing—prosecutor's argument—mitigating circumstances**

There was no plain error in a sentencing hearing for first-degree murder where defendant contended that the prosecutor argued that the mitigating circumstances submitted by defendant were in fact aggravating circumstances because defendant had denied his victim mitigating circumstances but the argument in context was that the mitigating circumstances had little value when compared to the circumstances of defendant's crime and his character.

**Am Jur 2d, Trial §§ 554 et seq.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

22. **Criminal Law § 452 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—mitigating circumstances**

It would have been improper, and possibly prejudicial, for a prosecutor in a first-degree murder sentencing hearing to argue that mitigating circumstances must justify or excuse a killing or reduce it to a lesser degree of crime; however, no such argument was made in this case.

**Am Jur 2d, Trial §§ 554 et seq.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial**

violate due pprocess or constitute denial of fair trial. 40 L. Ed. 2d 886.

23. **Criminal Law § 447 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—reference to victim**

The prosecutor's argument in a first-degree murder sentencing hearing did not require intervention *ex mero motu* where the prosecutor argued that "it's time we do something for the victims."

**Am Jur 2d, Trial §§ 648 et seq.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

24. **Criminal Law § 442 (NCI4th)— first-degree murder—sentencing—prosecutor's argument—jury as conscience of community**

There was no error in a first-degree murder sentencing hearing where defendant contended on appeal that the prosecution had argued at trial that the jury should convict defendant because of public sentiment, but the prosecutors were merely reminding the jurors that they would be the voice and conscience of the community, which is not improper.

**Am Jur 2d, Trial §§ 567 et seq.**

**Prejudicial effect of prosecuting attorney's argument to jury that people of city, county, or community want or expect a conviction. 85 ALR2d 1132.**

25. **Criminal Law § 1056 (NCI4th)— first-degree murder—sentencing hearing—allocution**

There was no error in a first-degree murder sentencing hearing where defendant's motion for allocution had been granted before jury selection but the court never afforded defendant the opportunity to speak to the sentencing jury. Since defendant does not have a constitutional, statutory, or common law right to allocution and failed to remind the court of his desire to speak to the jury at the appropriate stage of the case, there was no error.

**Am Jur 2d, Criminal Law § 530.**

**Necessity and sufficiency of question to defendant as to whether he has anything to say why sentence should not be pronounced against him. 96 ALR2d 1292.**

**26. Criminal Law § 1337 (NCI4th)— first-degree murder—sentencing—previous felonies involving violence—not redundant**

There was no error in a first-degree murder sentencing hearing where the jury was permitted to find as separate aggravating circumstances that defendant had previously been convicted of assault with a deadly weapon inflicting serious injury and attempted second-degree sexual offense where defendant contended that both convictions arose from the same course of conduct against one victim and that submission of both was redundant. Aggravating circumstances are not redundant absent a complete overlap in the evidence supporting them; here, defendant was convicted of separate offenses with each offense being supported by distinct evidence. Any overlap in the evidence did not rise to the level of complete redundancy.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**27. Criminal Law § 1339 (NCI4th)— first-degree murder—sentencing—murder committed while engaged in sexual offense and rape—two aggravating circumstances**

There was no error in a first-degree murder sentencing hearing where the trial court instructed the jury that it could consider as two aggravating circumstances that the murder was committed while defendant was engaged in a first-degree sexual offense and first-degree rape of the same victim. The elements of first-degree sexual offense and first-degree rape are different and the aggravating circumstances were supported by distinct and separate evidence. The only overlap was that both crimes were committed against the same victim. The evidence did not overlap to the point of redundancy.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**28. Criminal Law § 1320 (NCI4th)— first-degree murder—sentencing—instructions—same evidence for more than one circumstance—omission of instruction not plain error**

There was no plain error in a first-degree murder sentencing hearing where the trial court did not instruct the jury that it could not consider the same evidence to find more than one aggravating circumstance, as it should have done, but defendant neither objected to the instructions given nor requested limiting instruc-

tions and there was clearly sufficient, independent evidence to support each of the aggravating circumstances in question.

**Am Jur 2d, Trial §§ 1441 et seq.**

**29. Criminal Law § 1324 (NCI4th)— first-degree murder— sentencing—issues—weighing circumstances**

The trial court did not err in a first-degree murder sentencing hearing by instructing the jury that it was to continue to issue four if the mitigating circumstances were of equal weight to the aggravating circumstances.

**Am Jur 2d, Trial §§ 1441 et seq.**

**30. Criminal Law § 1343 (NCI4th)— first-degree murder— sentencing—particularly heinous, atrocious, or cruel circumstance—not unconstitutional**

The aggravating circumstance that a murder was especially heinous, atrocious or cruel was not unconstitutional on its face or as applied, and there was sufficient evidence to warrant submitting the circumstance to the jury.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**31. Criminal Law § 1347 (NCI4th)— first-degree murder— sentencing hearing—course of conduct—not unconstitutional**

The course of conduct aggravating circumstance, N.C.G.S. § 15A-2000(e)(11), is not unconstitutional.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**32. Criminal Law § 458 (NCI4th)— first-degree murder— sentencing—parole eligibility**

The trial court did not err in a first-degree murder sentencing hearing by denying defendant's request to argue parole eligibility.

**Am Jur 2d, Trial §§ 522 et seq.**

**33. Criminal Law § 1373 (NCI4th)— first-degree murder—
death sentence—not disproportionate**

A sentence of death for a first-degree murder was not
imposed under the influence of passion, prejudice, or any other
arbitrary factor, the aggravating circumstances were supported
by the evidence, and the death sentence was not disproportion-
ate. Defendant had already been sentenced to death in a similar
case, the death penalty has been upheld in many of the cases
where the jury found that the murder was especially heinous,
atrocious or cruel, the proportionality pool includes numerous
affirmed death cases in which the jury found that defendant had
previously been convicted of a felony involving the use of vio-
lence, and the Supreme Court has never found to be dispropor-
tionate any death sentence where the defendant has been
convicted of multiple murders.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for purposes of death penalty,
to establish statutory aggravating circumstance that mur-
der was heinous, cruel, depraved, or the like—post-*Gregg*
cases. 63 ALR4th 478.**

**Validity of death penalty, under Federal Constitution,
as affected by consideration of aggravating or mitigating
circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments
entered by McHugh, J., at the 25 January 1993 Special Criminal Ses-
sion of Superior Court, Stokes County, imposing a sentence of death
upon a jury verdict of guilty of first-degree murder and imposing con-
secutive sentences of life imprisonment for first-degree sexual
offense and first-degree rape. Heard in the Supreme Court 15 Sep-
tember 1994.

*Michael F. Easley, Attorney General, by Valerie B. Spalding,
Assistant Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

MEYER, Justice.

Defendant was tried for the first-degree murder of Dorothy
Louise Woods Johnson. The State's evidence showed that Ms.
Johnson went to the SRO, a country-western dance club in Winston-

STATE v. MOSELEY

[338 N.C. 1 (1994)]

Salem, on the evening of 12 April 1991. Ms. Johnson lived with her parents, and when she did not return home, they called the Sheriff's Department and reported Ms. Johnson missing. Defendant was also at the SRO on 12 April 1991, and he and Ms. Johnson had talked and danced together during the evening. Ms. Johnson was last seen alive at the SRO Club.

Ms. Johnson's naked body was found the next day, 13 April 1991, lying beside a secluded cul-de-sac in a new development known as Friendship Forest, in a rural area of Stokes County. She had been savagely beaten with a blunt force object, cut with a sharp object, sexually assaulted with a blunt instrument, raped, and manually and ligaturally strangled.

The jury found defendant guilty of first-degree murder, first-degree sexual offense, and first-degree rape. After a capital sentencing proceeding, the jury recommended that defendant receive the death penalty for the murder conviction, and Judge McHugh sentenced defendant accordingly. He additionally sentenced defendant to consecutive terms of life imprisonment for the convictions for first-degree sexual offense and first-degree rape.

Additional facts will be presented as necessary for the discussion of the issues.

JURY SELECTION AND PRETRIAL MOTIONS ISSUES

[1] In his first assignment of error, defendant contends that the trial court erroneously denied his motion for a change of venue. Defendant filed a pretrial motion and a supplemental motion at the close of jury selection for a change of venue, arguing that he could not receive a fair trial in Stokes County, in violation of his state and federal constitutional rights, because of the extensive media coverage his case had received. For the reasons discussed herein, we find this assignment of error to be without merit.

In support of his initial pretrial motion, defendant presented affidavits from two local television stations detailing the number of broadcasts in the four months prior to this trial in which they had coverage of either this case or of defendant's conviction of first-degree murder that occurred in neighboring Forsyth County. Defendant also introduced into evidence copies of numerous newspaper articles from the *Winston-Salem Journal* and other area papers dealing with this case and defendant's earlier conviction in Forsyth County. Defendant argued that the underlying facts of the Forsyth County

case would likely be introduced into evidence by the prosecution in this case under North Carolina Evidence Rule 404(b), N.C.G.S. § 8C-1, Rule 404(b) (1992), and that the extensive media coverage of the earlier Forsyth County trial would make a fair trial in this case impossible in Stokes County. The State presented testimony of a private attorney in Stokes County, Mike Bennett; Stokes County Sheriff Mike Joyce; Stokes County Clerk of Superior Court Wic Southern; and Stokes County Sheriff Deputy James Joyce to the effect that in each witness' opinion, defendant could receive a fair and impartial trial in Stokes County. The trial court denied defendant's pretrial motion.

The statute pertaining to change of venue motions provides:

If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:

(1) Transfer the proceeding to another county in the prosecutorial district as defined in G.S. 7A-60 or to another county in an adjoining prosecutorial district as defined in G.S. 7A-60, or

(2) Order a special venire under the terms of G.S. 15A-958.

The procedure for change of venue is in accordance with the provisions of Article 3 of this Chapter, Venue.

N.C.G.S. § 15A-957 (1988). In *State v. Yelverton*, 334 N.C. 532, 434 S.E.2d 183 (1993), this Court stated:

The test for determining whether venue should be changed is whether "it is reasonably likely that prospective jurors would base their decision in the case upon pre-trial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." [*State v. Jerrett*, 309 N.C. 239, 255, 307 S.E.2d 339, 347 (1983).] The burden of proving the existence of a reasonable likelihood that he cannot receive a fair trial because of prejudice against him in the county in which he is to be tried rests upon the defendant. *State v. Madric*, 328 N.C. 223, 226, 400 S.E.2d 31, 33 (1991). "In deciding whether a defendant has met his burden of showing prejudice, it is relevant to consider that the chosen jurors stated that they could ignore their prior knowledge or earlier formed opinions and decide the case solely on the evidence presented at trial." *Jerrett*, 309 N.C. at 255, 307 S.E.2d at

348. The determination of whether a defendant has carried his burden of showing that pre-trial publicity precluded him from receiving a fair trial rests within the trial court's sound discretion. *Madric*, 328 N.C. at 226, 400 S.E.2d at 33. The trial court has discretion, however, only in exercising its sound judgment as to the weight and credibility of the information before it, including evidence of such publicity and jurors' averments that they were ignorant of it or could be objective in spite of it. When the trial court concludes, based upon its sound assessment of the information before it, that the defendant has made a sufficient showing of prejudice, it must grant defendant's motion as a matter of law. *See State v. Abbott*, 320 N.C. 475, 478, 358 S.E.2d 365, 368 (1987).

*Id.* at 539-40, 434 S.E.2d at 187.

During jury selection, the trial court permitted the individual *voir dire* of prospective jurors on the media exposure issue. Almost all of the potential jurors indicated they had been exposed to some pretrial publicity in this matter. In denying defendant's supplemental motion for a change of venue, the trial court made, *inter alia*, the following findings of fact:

The Court finds that none of the jurors presently seated as jurors or alternate jurors are subject to bias or pretrial publicity, and that each and every one of the jurors seated in and each and every one of the jurors examined in this cause, save and except a single juror that [sic] was excused for pretrial publicity, expressed a clear and abiding certainty that the effect of pretrial publicity or notice could be stricken from his consideration; and that the jurors each expressed a clear and abiding conviction that the juror could base his verdict solely upon the evidence presented during the trial and upon the law as instructed by the Court.

After reviewing the two affidavits submitted by defendant in the record on appeal, the newspaper articles presented by defendant to the trial court, the testimony of the State's witnesses, and the transcript of the jury selection *voir dire*, we are satisfied that the trial court did not err in denying defendant's motion for a change of venue. The affidavits submitted in the record on appeal indicate only that one television station covered developments in defendant's Forsyth County trial approximately fifty times and that the other station covered developments eleven times. The affidavits do not suggest in any way that the televised coverage of defendant's cases was inflamma-

tory. While defendant has presented numerous newspaper accounts of the cases against him, we note that "[t]his Court has consistently held that factual news accounts regarding the commission of a crime and the pretrial proceedings do not of themselves warrant a change of venue." *State v. Gardner*, 311 N.C. 489, 498, 319 S.E.2d 591, 598 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985). The bulk of the articles submitted by defendant were factually based and expressed no opinions regarding defendant's guilt or innocence. Defendant included among the newspaper articles two excerpts from the "Readers Speak Up" page of the *Surry Scene*, dated 13 October 1992, and 20 October 1992. In those two excerpts, ten anonymous callers had editorialized about the Forsyth County case. However, it cannot be said that these opinions prejudiced defendant in any way. Further, the State put on credible evidence in rebuttal of defendant's claims of prejudicial media coverage.

This Court has noted that the potential jurors' responses to questions on *voir dire* are the best evidence of whether pretrial publicity was prejudicial or inflammatory. *State v. Richardson*, 308 N.C. 470, 480, 302 S.E.2d 799, 805 (1983). If each juror states unequivocally that he can set aside what he has heard previously about a defendant's guilt and arrive at a determination based solely on the evidence presented at trial, the trial court does not err in refusing to grant a change of venue. *State v. Moore*, 335 N.C. 567, 586, 440 S.E.2d 797, 808, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 174, *reh'g denied*, —— U.S. ——, 130 L. Ed. 2d 532 (1994). In this case, to assure a fair and impartial venire, the trial court permitted individual *voir dire* of prospective jurors to discuss pretrial publicity. The transcript demonstrates that the twelve jurors and two alternates who ultimately heard defendant's case were thoroughly questioned on their exposure to pretrial publicity. The transcript further shows that each juror unequivocally stated that he or she could put aside anything read, seen, or heard about defendant and that he or she would decide defendant's case solely upon the evidence presented in the courtroom.

Defendant has not established a reasonable likelihood that pretrial publicity prevented him from receiving a fair and impartial trial in Stokes County. We hold, therefore, that the trial court did not err in denying defendant's motion for a change of venue.

[2] Defendant next assigns error to the trial court's denial of defendant's motion for funds to employ a pathologist to assist in his defense, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments

to the United States Constitution; Article I, Sections 19, 23, and 27 of the North Carolina Constitution; and applicable North Carolina law. We disagree.

Defendant filed a written pretrial motion requesting funds to hire a pathologist to assist in his defense. Defendant noted that Dr. Pat Lantz performed the autopsy on the body of Ms. Johnson in the case at bar. Thereafter, Dr. Lantz supervised the autopsy of Deborah Henley in a homicide investigation in Forsyth County. Defendant was arrested, indicted, tried, and convicted in Forsyth County for the first-degree murder of Deborah Henley and received a sentence of death. During the Forsyth County trial, Dr. Lantz was qualified by the State as an expert in pathology and testified that there were similarities in the deaths of Ms. Johnson and Ms. Henley because of the nature and location of the injuries to their bodies. This testimony by Dr. Lantz was admitted in the Forsyth County trial, under North Carolina Evidence Rule 404(b), for the limited purpose of showing that both crimes were committed by the same person and that person was defendant. Dr. Lantz demonstrated his testimony with a series of slides comparing the wounds of both victims. Also, Dr. Lantz testified that some of the wounds inflicted on the bodies of both victims were torture wounds. Defendant argued that these alleged similarities as to the manner of the killings of the two victims were critical to evidence of Ms. Henley's murder being admitted in this case under Rule 404(b). Additionally, during the Forsyth County trial, questions arose regarding the time of death of the victims.

Defendant argued to the trial court in this case that he anticipated the prosecutor similarly would introduce evidence of Ms. Henley's death in this trial, pursuant to N.C.G.S. § 8C-1, Rule 404(b), for the purpose of establishing defendant as the perpetrator. Therefore, a pathologist was needed by the defense to review the autopsies and the slides in order to determine whether the locations and types of wounds on the two victims were in fact similar. Defendant also contended that a pathologist was needed to assess whether the wounds on the two victims were torture wounds and to analyze the time of death of the victims. The trial court summarily denied defendant's motion. At trial, evidence of Ms. Henley's murder was admitted under Evidence Rule 404(b), and Dr. Lantz testified using the slides and photographs on the issues of identity, common scheme or plan, and *modus operandi*.

The relevant statutory provisions provide that "[t]he court, in its discretion, may approve a fee for the service of an expert witness who testifies for an indigent person, and shall approve reimbursement for the necessary expenses of counsel. Fees and expenses accrued under this section shall be paid by the State." N.C.G.S. § 7A-454 (1989). Further, N.C.G.S. § 7A-450(b) provides that "[w]henever a person, under the standards and procedures set out in this Subchapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation." N.C.G.S. § 7A-450(b) (1989).

In *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985), the United States Supreme Court held that

> when [an indigent] defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Id.* at 83, 84 L. Ed. 2d at 66. This Court has followed *Ake* and required, upon the threshold showing of a specific need of expert assistance, the provision of funds for an expert. *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988). In determining whether the defendant has made the necessary showing, the trial court should consider all the facts and circumstances known to it at the time the motion is made. *State v. Parks*, 331 N.C. 649, 656, 417 S.E.2d 467, 471 (1992). The decision of whether defendant has demonstrated a specific need is one properly left to the sound discretion of the trial judge. *State v. Holden*, 321 N.C. 125, 136, 362 S.E.2d 513, 522 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988).

In order to establish the threshold showing of specific need for the assistance of an expert, defendant must show that he will be deprived of a fair trial without the expert assistance or that there is a reasonable likelihood that the expert assistance will materially assist him in the preparation of his defense. *State v. Phipps*, 331 N.C. 427, 446, 418 S.E.2d 178, 187 (1992). The "mere hope or suspicion of the availability of certain evidence that might erode the State's case or buttress a defense will not suffice to satisfy the requirement that defendant demonstrate a threshold showing of specific necessity for expert assistance." *State v. Tucker*, 329 N.C. 709, 719-20, 407 S.E.2d 805, 811-12 (1991). Similarly, undeveloped assertions that the request-

ed expert assistance would be beneficial or even essential to the preparing of an adequate defense are insufficient to satisfy this threshold requirement. *Phipps*, 331 N.C. at 446, 418 S.E.2d at 187-88.

In this case, defendant did not demonstrate a sufficient showing of particularized need to warrant expert assistance under *Ake*. Defendant failed to demonstrate that the assistance of a pathologist would have materially aided him in the preparation of his defense or that the lack thereof deprived him of a fair trial. Instead, a review of the record, the transcripts, and the slides and photographs at issue reveals that the similarities between the location and types of wounds of the two victims are obvious and self-explanatory, even to the ordinary lay juror. There was nothing so mysterious or difficult about the comparison of the victims' multiple wounds as to prevent the ordinary lay juror from determining whether the State's expert had reached the right conclusion.

Further, there was substantial additional evidence that demonstrated the similarities between the two crimes from which the jury could find that they were committed by the same person. In addition to the similarities in the wounds of the victims, both Ms. Johnson and Ms. Henley were last seen alive at the SRO Club. Both women were seen with defendant at the SRO on the night of their disappearances, and both women were of small stature and suffered from speech impediments.

Also, the State presented uncontradicted evidence of blood typing and DNA testing which linked defendant to Ms. Johnson on the night she was murdered. Indeed, testimony by the State's DNA expert indicated that the chance that defendant was not the donor of semen found in Ms. Johnson was approximately one in 274 million. Defendant was provided with a DNA expert to reevaluate and challenge, if appropriate, this conclusion. Thus, even though defendant's identity as the perpetrator of the crime in this case was critical, and the State's case was built on circumstantial evidence, defendant still has not demonstrated that a pathologist could have offered anything to his defense. The assistance of the pathologist sought by defendant would have been of little, if any, value to him. Therefore, defendant has failed to satisfy his burden of showing either that the assistance of a pathologist would have materially aided him in the preparation of his defense or that the lack thereof deprived him of a fair trial.

Defendant also argues that a pathologist was necessary to examine Dr. Lantz's conclusion that both victims sustained torture wounds

and were subjected to overkill. However, this conclusion is similarly readily apparent to even a lay juror upon viewing the photographs and slides introduced into evidence. The photographs and slides clearly illustrate that both victims were very brutally beaten from head to toe, in addition to being strangled.

While defendant contends that an expert was necessary in this trial to provide an opinion concerning the time of death of the victims, this Court finds, after reviewing the transcript, that time of death was not a material issue in this case. Therefore, the trial court's refusal to grant defendant's motion did not deprive him of a fair trial, nor did it deprive defendant of material assistance in the preparation of his defense. There was no risk of an erroneous deprivation of expert assistance as a result of the trial court's denial of defendant's motion. Therefore, we hold that the trial court did not err in denying defendant's motion for funds to hire a pathologist.

[3] Defendant next asserts error in the trial court's limitation of questions by defendant during the *voir dire* of several potential jurors. Defendant contends that the trial court unconstitutionally limited the scope of defendant's *voir dire* questions about the extent of jury exposure to pretrial publicity and the content of the information heard by the jurors, by repeatedly sustaining the prosecutors' objections to defendant's questions, thus rendering the *voir dire* inadequate under *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492 (1992). As a result, defendant argues that he was prevented from developing a basis for challenges for cause and was inhibited in the intelligent exercise of peremptory challenges. Defendant also argues that the trial court's actions precluded defendant from making informed peremptory challenges, in violation of defendant's statutory rights under N.C.G.S. § 15A-1214. After a careful review of the transcript, we find no error.

A defendant has the statutory right to "personally question prospective jurors individually concerning their fitness and competency to serve as jurors in the case to determine whether there is a basis for a challenge for cause or whether to exercise a peremptory challenge." N.C.G.S. § 15A-1214(c) (1988). Further, "part of the [constitutional] guaranty of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. at ——, 119 L. Ed. 2d at 503, *quoted in State v. Yelverton*, 334 N.C. 532, 541, 434 S.E.2d 183, 188 (1993). However, within these broad principles, the trial judge has wide discretion to see that a competent,

fair, and impartial jury is impaneled. *State v. Yelverton*, 334 N.C. at 541, 434 S.E.2d at 188. The trial court's rulings in this regard will not be disturbed absent a showing of abuse of discretion. *Id.*

Defendant's reliance on the United States Supreme Court decision in *Morgan v. Illinois* for the proposition that the trial court improperly precluded him from inquiring into the extent and content of juror exposure to pretrial publicity in violation of the United States and North Carolina Constitutions is misplaced. In *Morgan*, the Supreme Court held that a defendant is "entitled, upon his request, to inquiry discerning those jurors who, even prior to the State's case-in-chief, had predetermined the terminating issue of his trial, that being whether to impose the death penalty." 504 U.S. at ——, 119 L. Ed. 2d at 507. The Supreme Court further held that a defendant must be allowed the opportunity through jury *voir dire* "to lay bare the foundation of [his] challenge for cause against those prospective jurors who would always impose death following conviction." *Id.* at ——, 119 L. Ed. 2d at 506 (emphasis omitted).

In *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), we considered the applicability of *Morgan* to the trial court's sustaining of the prosecutor's objections to the form of defendant's *voir dire* questions, "Under the factual situation that I have explained to you, would you have any trouble giving—if the evidence and mitigating circumstances so warranted, and other evidence—the defendant life imprisonment. Or, under those facts or situations, would you be prone to give the defendant the death penalty?" *Id.* at 100, 443 S.E.2d at 316. In so doing, we noted that "[i]n *Morgan*, the defendant's question was whether the juror would 'automatically vote to impose the death penalty no matter what the facts are,' " *id.* (quoting *Morgan*, 504 U.S. at ——, 119 L. Ed. 2d at 499), and concluded that the question in *Robinson* bore little resemblance to the question specifically authorized in *Morgan*. In the case at bar, defendant's assignment of error relates to *voir dire* questions regarding pretrial publicity, questions that clearly bear no resemblance to that specifically authorized in *Morgan*.

Defendant argues in his brief that the United States Supreme Court's recent remand of *State v. Price*, 331 N.C. 620, 418 S.E.2d 169 (1992), *sentence vacated*, —— U.S. ——, 122 L. Ed. 2d 113 (1993), for reconsideration in light of *Morgan v. Illinois* signals the Supreme Court's intent that *Morgan* be construed broadly. However, on remand, this Court held that the *voir dire* question at issue in *Price*

was whether prospective jurors felt it necessary for the State to show additional aggravating circumstances before they would vote to impose the death penalty. *State v. Price*, 334 N.C. 615, 617, 433 S.E.2d 746, 747 (1993), *sentence vacated on other grounds*, —— U.S. ——, 129 L. Ed. 2d 888, *on remand*, 337 N.C. 756, 448 S.E.2d 827 (1994), *cert. denied*, 63 U.S.L.W. 3690 (1995). The question in *Price* is closely related to the *voir dire* question at issue in *Morgan*: whether a prospective juror would automatically impose the death penalty upon finding the defendant guilty. Therefore, we conclude that the Supreme Court's remanding of *Price* does not signal the broad construction of *Morgan* sought by defendant.

*Morgan* does not create a constitutional right to ask *voir dire* questions about the specifics of juror exposure to pretrial publicity and the content of that publicity. Indeed, the Supreme Court noted that "since peremptory challenges are not required by the Constitution, this benefit cannot be a basis for making 'content' questions about pretrial publicity a constitutional requirement." *Mu'Min v. Virginia*, 500 U.S. 415, 424-25, 114 L. Ed. 2d 493, 505 (citation omitted), *reh'g denied*, 501 U.S. 1269, 115 L. Ed. 2d 1097 (1991).

Moreover, a careful review of the transcript reveals that the trial court did not abuse its discretion in curtailing defendant's *voir dire* inquiries. In the individual *voir dire* of prospective jurors Holder (Robin), Montgomery, Willard, Inman, and Boles on publicity issues, defendant attempted to ask specifically about the content of pretrial publicity heard by these individuals. The prosecutor objected, and the trial court sustained the objection. However, in each instance, prior to the defendant's content question, all prospective jurors had unequivocally indicated that they had neither formed nor expressed any opinion of defendant's guilt or innocence as a result of pretrial publicity, and that they were certain they could disregard entirely anything they had heard or read about the case and decide the verdict solely on the evidence presented. Furthermore, defendant did not peremptorily excuse prospective juror Inman, and Mr. Inman sat as a juror in this case. The trial judge did not err in sustaining the prosecutor's objections.

[4] Defendant also argues that his *voir dire* of prospective juror Barlow was improperly limited by the trial court. Prospective juror Barlow indicated that he was a neighbor of the victim's family and that he had spoken with the family about the case approximately one year earlier, but had not talked with them about the case since that

time. During the individual *voir dire* of prospective juror Barlow on the publicity issue, defendant attempted to ask Mr. Barlow how far from the victim he lived. The prosecutor objected to the question, and the trial court sustained the objection, stating that "[t]his is not strictly what we are inquiring into at this time . . . . That would be an issue for inquiry at a later time." Later in the individual *voir dire*, the following colloquy occurred:

[DEFENDANT]: After discussing this case with them [family of the victim] wouldn't it make you feel uncomfortable to return a verdict of not guilty if the evidence so showed?

[PROSECUTOR]: Objection.

THE COURT: At this inquiry objection be [sic] sustained.

[DEFENDANT]: Have you yourself expressed an opinion about this case?

MR. BARLOW: What do you mean? Explain.

[DEFENDANT]: Well, have you formed an opinion in your own mind and have you then expressed that opinion to someone else?

MR. BARLOW: I think whoever did, did the, did it should be punished.

[DEFENDANT]: Have you formed an opinion as to what that punishment should be?

[PROSECUTOR]: Well objection, at this stage.

THE COURT: Objection at this stage is sustained.

Defendant had the opportunity to question Mr. Barlow about this issue during group *voir dire*, and in fact did so. Defendant was not prohibited from probing extensively into whether Mr. Barlow would be uncomfortable or embarrassed to return a verdict of not guilty because of his connections with the victim's family. Mr. Barlow indicated that he would "try to be fair." After several questions along these lines, the prosecution objected to the questions because they had been asked and answered. The trial court sustained the objection.

Under these circumstances, we find that the trial court acted well within its discretion. Defendant was not prohibited from eliciting information that would have disqualified Mr. Barlow as a juror. Further, during the individual *voir dire* and prior to being questioned by

defense counsel, Mr. Barlow had said, in response to the court's inquiries, that if he were seated as a juror, he could decide the case solely on the evidence presented and could disregard any prior information. Mr. Barlow also indicated that his prior knowledge of the case would not make rendering a decision solely on the evidence difficult.

Defendant also argues that his *voir dire* of prospective jurors Martin and Thomas was improperly hampered by the trial court. We disagree. After a careful review of the transcript, we find no error in this regard.

[5] Defendant further argues in this assignment of error that the trial court failed to excuse for cause jurors whose answers revealed that they held views that would substantially impair their ability to follow the jury instructions and the law. However, defendant has failed to preserve this issue for appeal. N.C.G.S. § 15A-1214 provides:

In order for a defendant to seek reversal of the case on appeal on the grounds that the judge refused to allow a challenge made for cause, he must have:

(1) Exhausted the peremptory challenges available to him;

(2) Renewed his challenge as provided in subsection (i) of this section; and

(3) Had his renewal motion denied as to the juror in question.

N.C.G.S. § 15A-1214(h) (1988).

In this case, defendant challenged for cause two prospective jurors, Mr. Holden and Mr. Slate. The trial court excused Mr. Holden for cause but did not so excuse Mr. Slate. Defendant thereafter peremptorily challenged Mr. Slate. Defendant then used all of his remaining peremptory challenges, the last one being used to excuse prospective juror Whicker. Defendant contends in his brief that he attempted to challenge for cause a final juror who was seated, and thereby effectively preserved this issue. However, a close reading of the transcript reveals that defendant did not object to any jurors, either for cause or peremptorily, after exercising his last peremptory challenge on prospective juror Whicker; nor did defendant renew his challenge for cause against prospective juror Slate. Instead, defendant asked the trial court for additional peremptory challenges or, alternatively, to be allowed to use one of his two peremptory challenges allotted for the selection of the alternates. The trial court

STATE v. MOSELEY

[338 N.C. 1 (1994)]

denied both requests. Juror Bundy was the last juror selected, and the trial court specifically asked defendant if he accepted this juror. Defendant did not attempt to exercise an additional peremptory challenge, but instead only responded, "Your Honor, we have no other challenges at this time."

"The statutory method for preserving a defendant's right to seek appellate relief when a trial court refuses to allow a defendant's challenge for cause is mandatory and is the only method by which such rulings may be preserved for appellate review." *State v. Sanders*, 317 N.C. 602, 608, 346 S.E.2d 451, 456 (1986). By failing to comply with the procedure made mandatory by the statute, defendant failed to preserve any such purported error for appellate review.

Additionally, even had defendant complied with the statute in this case, he would not be entitled to relief. The standard for determining whether a prospective juror may properly be excused for cause for his views on capital punishment is whether those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985). Our reading of the transcript reveals that defendant did not establish that Mr. Slate's views on capital punishment would substantially impair the performance of his duties as a juror; therefore, the trial court properly denied defendant's challenge.

The questioning of prospective juror Slate during individual *voir dire* proceeded as follows:

[DEFENDANT]: Did you express any opinion to anyone what you think or thought should be done with someone convicted of that particular crime?

MR. SLATE: Yeah. Somebody convicted of that crime, yes. I feel like they ought to be probably put to death.

[DEFENDANT]: All right. So is it your opinion that if you were to sit as a juror in this case that you feel the proper punishment would be death if Mr. Moseley was found guilty?

[PROSECUTOR (MR. DELLINGER)]: Objection. Outside the scope of this inquiry.

[PROSECUTOR (MR. YEATTS)]: Objection.

THE COURT: Mr. Slate, were you able to hear the remarks I made yesterday about the procedure involved in a trial on first degree murder charges?

MR. SLATE: Yes, sir, about the life, and life or death.

THE COURT: Yes, sir. The law maintains and provides that the death penalty is not necessarily appropriate, and is not appropriate in every first degree murder case. That whether the death penalty is an appropriate punishment is determined in the second phase of the trial, the sentencing proceeding, where the State and the defendant have the opportunity to offer additional evidence. And that there's [a] continuing burden of proof on the State beyond a reasonable doubt in that second hearing. I think the question at this point is, do you understand that even if a verdict of first degree murder were returned in this case it would not automatically follow as a matter of course that the sentence of death would be appropriate?

MR. SLATE: Yes, sir, I understand that.

THE COURT: You understand it would be necessary for the jury to consider the evidence presented and the arguments of counsel at the sentencing proceeding and then consider the law as the Judge gives it to the jury?

MR. SLATE: Yes.

THE COURT: Do you believe you would be able to abide by that law—

MR. SLATE: Yes, sir.

Thereafter, defendant was permitted to continue questioning Mr. Slate. Mr. Slate then told defendant that his earlier opinion was "probably formed on ignorance of the law and proceedings" and that he would not find it difficult to put that opinion completely out of his mind. Mr. Slate also indicated, in response to the trial court's questioning, that he was certain he could set aside any opinions he may have held and decide the case solely on the evidence presented. The trial court did not err in denying defendant's challenge for cause of prospective juror Slate.

**[6]** Defendant also argues under this assignment of error that the trial court, apparently on its own initiative, should have excused two prospective jurors for cause. Defendant contends that the trial court

should have asked, on its own initiative, additional questions of prospective juror Tilley concerning the fact that Mr. Tilley recalled seeing in the paper where defendant had been previously tried in Forsyth County, in order to more fully develop a potential challenge for cause of Mr. Tilley. Further, defendant contends that the trial court, on its own initiative, should have excused prospective juror Tilley for cause. This argument is without merit. Mr. Tilley indicated that he had formed no opinion of this case and that he could disregard any information he had previously obtained and decide this case solely upon the evidence presented. Similarly, defendant argues that the trial court should have excused prospective juror Whicker for cause. However, defendant never challenged Mr. Whicker for cause. While Mr. Whicker had initially indicated to defendant that if the State asked for the death penalty and the jury found defendant guilty, he would vote to impose the death penalty, after the trial judge explained the applicable law to Mr. Whicker, he indicated that he could follow the law and that he could consider both the death penalty and life imprisonment as sentencing options. Therefore, we also find no error by the trial court in this matter and conclude that the trial court did not abuse its discretion in the conducting of the jury *voir dire*.

GUILT-INNOCENCE PHASE

[7] Next, defendant contends that the trial court committed prejudicial error by refusing to intervene *ex mero motu* during the prosecutors' closing arguments to the jury at the guilt-innocence phase of the trial and to preclude prosecutors from making arguments to the jury that were misstatements of the applicable law. Defendant argues that the prosecutors' closing arguments impermissibly defined the legal concepts "reasonable doubt" and "the presumption of innocence," thus undermining defendant's constitutional guarantees by denigrating the presumption of innocence guaranteed to defendant. Defendant further argues that the trial court erred in permitting the prosecutors to repeatedly refer to the State's evidence as being uncontradicted and the failure of the defense to present any witnesses to testify. Defendant notes that he objected once to the prosecutor's statement that the evidence was uncontradicted, but concedes that he did not object to the prosecutors' arguments regarding the meanings of "reasonable doubt" and "the presumption of innocence."

It is well settled that the closing arguments of counsel are left largely to the control and discretion of the trial judge. *State v. Robinson*, 330 N.C. 1, 31, 409 S.E.2d 288, 305 (1991). Where a defend-

ant does not object at trial to an allegedly improper jury argument, it is only reversible error for the trial court not to intervene *ex mero motu* where the prosecutor's argument is so grossly improper as to constitute a denial of defendant's due process rights. *Id.* Further, it is well established that the prosecution may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State. *State v. Reid*, 334 N.C. 551, 555, 434 S.E.2d 193, 196 (1993). Upon a review of the record and transcript, we conclude that the prosecutors' arguments in this case were not so grossly improper as to require the trial judge to intervene *ex mero motu*. We further find that the trial court did not err in overruling defendant's objection to the prosecutor's argument. Therefore, we conclude that there was no reversible error.

[8] In his next assignment of error, defendant argues that the trial court erred in allowing witness Carter to testify, over defendant's objection, that he contacted law enforcement officers after seeing on television that defendant had been charged with the murder of Deborah Henley in Forsyth County. Chuck Carter, an acquaintance of Dorothy Johnson, testified that he saw defendant and Ms. Johnson dancing together at the SRO Club around midnight on the night of Ms. Johnson's disappearance, 12 April 1991. He further testified that he called law enforcement officers to report seeing Ms. Johnson with defendant. The challenged testimony followed:

Q  Tell us why and when this was that you called.

A  When—

[DEFENDANT]: Objection.

THE COURT: Objection overruled.

Q  You may answer.

A  When I seen the second murder —

[DEFENDANT]: Objection.

THE COURT: Objection overruled.

Q  You may answer.

A  When I seen the second murder that had, someone had—I had kept up with someone had left the SRO. And showed they had charged the defendant, and showed his picture on television. I

recognized him and realized he was the one that was with Ms. Johnson, and proceeded to call Crime Stoppers.

Q   Do you know what time length had passed between the time of 12th of April and when you saw him on T.V.?

[DEFENDANT]: Objection.

THE COURT: Objection overruled.

A   Roughly three months.

Defendant concedes that the testimony that Carter saw defendant dancing with Ms. Johnson and that Carter called the police is relevant. However, he argues on appeal that this testimony was improperly admitted as evidence of defendant's character, in violation of N.C.G.S. § 8C-1, Rule 404(a). Defendant further contends that the evidence that Carter called the police because he recognized defendant as being with Ms. Johnson only after seeing on television that defendant had been charged with another murder was irrelevant, inflammatory, and improperly prejudicial. We disagree.

North Carolina Evidence Rule 402 provides, in pertinent part, that "all relevant evidence is admissible" and that "[e]vidence which is not relevant is not admissible." N.C.G.S. § 8C-1, Rule 402 (1992). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Rule 404 states, in pertinent part:

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . .

. . . .

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404 (1992).

The list of purposes in the second sentence of subsection (b) of Rule 404 is neither exclusive nor exhaustive. *State v. Morgan*, 315 N.C. 626, 637 n.2, 340 S.E.2d 84, 91 n.2 (1986). The defendant's general objection is ineffective unless there is no proper purpose for which the evidence is admissible. *State v. Young*, 317 N.C. 396, 412, 346 S.E.2d 626, 635 (1986). The burden is on the defendant to show that there was no proper purpose for which the evidence could be admitted. *Id.*

The State argues that the testimony at issue was admitted to show why witness Carter recognized defendant as being with Ms. Johnson on the night she disappeared. The testimony was relevant since Carter might never have realized that he had information concerning Ms. Johnson's murder had he not seen the television report three months later. We find this argument persuasive. The testimony in question was relevant to explain why Carter did not contact the police until three months after the murder of Ms. Johnson. As such, the evidence was not admitted for the improper purpose of demonstrating defendant's character and that defendant acted in conformity therewith.

Defendant cites *State v. Cashwell*, 322 N.C. 574, 369 S.E.2d 566 (1988), for the proposition that the challenged evidence in this case is not admissible under the exceptions of N.C.G.S. § 8C-1, Rule 404(b). In *Cashwell*, defendant was on trial for two counts of first-degree murder. We held that the trial court erred in permitting an inmate, who was in jail with the defendant and who testified as to inculpatory statements made by defendant regarding the murders, to testify that defendant told him he was in jail for the attempted murder of his girlfriend. In so holding, we noted that "[a]lthough the purposes for which evidence of other crimes, wrongs, or acts is admissible are not limited to those enumerated in the rule, we find that this testimony was not relevant to any fact or issue other than the character of the accused." *Id.* at 578, 369 S.E.2d at 568. The State argued in *Cashwell* that the witness' testimony was competent for the purpose of showing the relationship between the witness and defendant that led up to defendant's inculpatory statements, which were made a month after the statements at issue. *Id.* at 577, 369 S.E.2d at 568. The Court rejected this argument, however, stating that "[t]he challenged testimony in no way was necessary to show the full context of defendant's confession, nor was it required in order to show any confidential relationship between defendant and [the witness]." *Id.* at 578, 369 S.E.2d at 568.

We find *Cashwell* distinguishable from the case at bar. Unlike the challenged evidence in *Cashwell*, the testimony at issue here is relevant and necessary to explain why Carter did not contact the police until three months after the time of the murder and to explain why he ultimately recognized defendant.

Although defendant in his brief does not refer to Evidence Rule 403, it appears that he also argues that the testimony in question should have been excluded, even if relevant, because its probative value is substantially outweighed by its prejudicial effect. North Carolina Evidence Rule 403 provides: "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992).

Rule 403 requires the court to balance the proffered evidence's probative value against its prejudicial effect. *State v. Mercer,* 317 N.C. 87, 93, 343 S.E.2d 885, 889 (1986). Necessarily, evidence that is probative in the State's case will have a prejudicial effect on the defendant. The question, however, is one of degree. *Id.* at 93-94, 343 S.E.2d at 889. Relevant evidence is admissible, despite its prejudicial effect, unless the evidence is unfairly prejudicial. *Id.* In this instance, the proffered evidence was not unfairly prejudicial. Extensive evidence of the murder of Deborah Henley in Forsyth County was admitted in this case under N.C.G.S. § 8C-1, Rule 404(b). In light of the extensive testimony regarding the murder of Deborah Henley, witness Carter's isolated statement was not unfairly prejudicial. Furthermore, there was considerable additional evidence against defendant, including DNA evidence linking defendant to Ms. Johnson and the testimony of another witness, Mark Lamb, that defendant was at the SRO Club with Ms. Johnson on 12 April 1991. Therefore, we conclude that the testimony at issue was properly admitted by the trial court as relevant evidence and that the testimony did not unfairly prejudice defendant.

[9] By another assignment of error, defendant contends that the trial court erred in refusing to admit testimony that Ms. Johnson was assaulted by someone other than defendant on the night she was murdered. During the cross-examination of the State's witness, Mark Lamb, who had testified on direct examination that he saw defendant with Ms. Johnson at the SRO on 12 April 1991, defense counsel attempted to elicit testimony that a black-haired man had also

approached Ms. Johnson at the SRO Club that night, pushed her, and told her, "You better stop or I'm going to get you." The prosecutor objected to this line of questioning, and the trial judge, after a hearing, sustained the objection. Defendant made an offer of proof. During the *voir dire*, Mr. Lamb testified that Ms. Johnson indicated to him that the black-haired man was the boyfriend of her cousin and that the man thought Ms. Johnson was trying to break up his relationship with her cousin. Mr. Lamb further indicated that Ms. Johnson was frightened.

Defendant argues that the pathologist who performed the autopsy on Ms. Johnson testified later during the trial that a dark hair was found under the chipped fingernail of Ms. Johnson's left index finger. Defendant contends that the testimony of Mr. Lamb, especially when coupled with the evidence of the black hair, was relevant and thus admissible under N.C.G.S. § 8C-1, Rule 401. He argues that under *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987), the testimony should have been admitted to show that someone else committed the crime.

Before such evidence is admissible, it must tend to both "implicate [the guilt of] another *and* be inconsistent with the guilt of the defendant." *Id.* at 667, 351 S.E.2d at 279-80. The evidence must do more than raise conjecture or speculation of another's guilt. Rather, "[i]t must point directly to the guilt of the other party." *Id.* at 667, 351 S.E.2d at 279.

In the case *sub judice*, the excluded testimony cannot be said to give rise to more than mere speculation and conjecture of another's guilt. The excluded testimony of Mr. Lamb fails to point directly to another person as the perpetrator of the crime with which defendant is charged, the murder of Dorothy Johnson. Further, at the time defendant attempted to introduce the excluded testimony, there was no evidence before the jury that a dark hair had been found under Ms. Johnson's fingernail. Defendant never developed any connection between the dark hair found under Ms. Johnson's fingernail and the unnamed black-haired man at the SRO Club. Additionally, the excluded testimony is not inconsistent with the guilt of defendant. For these reasons, this assignment of error is overruled.

[10] In his next assignment of error, defendant argues that the trial court erred in allowing an SBI serologist, Special Agent Budzynski, to testify that DNA testing excluded two individuals as donors of the semen found in Ms. Johnson's body. In essence, defendant argues that

the State was erroneously attempting to prove the guilt of defendant by establishing the innocence of others originally suspected of the crime, relying on *State v. England,* 78 N.C. 552 (1878). We find no merit in this contention.

Special Agent Budzynski was qualified as an expert in DNA analysis by the State and testified that DNA tests were performed on blood samples taken from Ms. Johnson, defendant, and also from two other individuals: Danny Cannady (a former boyfriend of Ms. Johnson) and William Mabe (the boyfriend of Ms. Johnson's friend, Sherry Hoss). The DNA samples from defendant, Danny Cannady, and William Mabe were compared to semen taken from Ms. Johnson's vagina. Special Agent Budzynski testified, without objection, that DNA analysis excluded Mr. Cannady and Mr. Mabe as the source of the semen found in Ms. Johnson's vagina. He further testified that on five of the six autorads of DNA analyzed, defendant's DNA profile matched the sperm taken from Ms. Johnson's vaginal cavity.

In *State v. England,* the defendant's brother had originally been arrested for burning a stable. *Id.* at 554. During defendant's trial, the solicitor asked a State's witness if the tracks found near the burnt stable matched defendant's brother's foot. Defendant objected to the evidence, but the trial court allowed it. *Id.* The tracks did not correspond to the brother's foot. *Id.* This Court held that the trial court erred and that the evidence was inadmissible. *Id.* In so doing, however, the Court noted: "The proposition of the State is simply this: A. did not commit the offense; therefore, B. did. It is impossible to see how evidence tending to establish the innocence of A. tends to establish the guilt of B., except in that very remote degree that it lessens, by one, an indefinite number, some one of whom might have been guilty." *Id.* (emphasis omitted). This case is readily distinguishable from *England.* In *England,* the State apparently had no direct evidence of defendant's guilt. However, in the case *sub judice,* DNA analysis provides direct evidence that defendant was the source of the semen found in Ms. Johnson's body and thus is evidence of defendant's guilt. The State did not offer the DNA analysis excluding Mabe and Cannady for the proposition that by excluding others as the culprit, defendant is established as the perpetrator. Therefore, we find no error.

**[11]** Defendant next contends that he is entitled to a new trial because there was insufficient evidence to support the trial court's

jury instruction on flight by defendant. Following a charge conference, the trial court instructed the jury on flight as follows:

> In this case, ladies and gentlemen, the state contends that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether to combine circumstances to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt. And further, this circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation. It must not be considered by you as evidence of premeditation or deliberation.

Defendant failed to object to the trial court's instruction and does not claim that plain error exists. North Carolina Rules of Appellate Procedure Rule 10(b)(2) states, in pertinent part:

> *Jury Instructions; Findings and Conclusions of Judge.* A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection . . . .

Rule 10(c)(4) further provides: "In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." Since defendant did not object or allege plain error, he has failed to properly preserve this issue for appeal. However, since this is a case in which the death penalty was imposed, we will consider the merits of the issue under a plain error analysis.

A trial court may properly instruct on flight " '[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.' " *State v. Green*, 321 N.C. 594, 607, 365 S.E.2d 587, 595 (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)), *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988). "[T]he relevant inquiry [is] whether there is evidence that defendant left the scene of the murder and took steps to avoid apprehension." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990). In *Levan*, we stated that where the defendant attempted to conceal the victim's body by ordering a cohort to drag it

further into the woods, ordered the cohort to wipe fingerprints off the gun and throw it into a river, and disposed of the victim's clothing and where defendant was not apprehended for almost a year, the evidence was "clearly sufficient to support the trial court's instruction on flight." *Id.*

Similarly, in this case, there was sufficient evidence to warrant an instruction on flight. The jury could have reasonably inferred flight from the evidence that defendant left Ms. Johnson's naked body in a dark, secluded rural area; removed her clothing and jewelry to delay her identification; left the scene; and was not apprehended until more than three months later. These efforts indicate an attempt by defendant to evade detection and capture. We find, therefore, no error, much less plain error.

[12]  Defendant next assigns error to the trial court's findings of fact on the State's motion to admit evidence of the murder of Deborah Henley, alleging that the findings are not supported by competent evidence. However, after a careful review of the transcript of the lengthy *voir dire* hearing on the motion to admit evidence of the Henley murder and of the trial court's findings of fact, we conclude that the findings were clearly supported by plenary competent evidence. Defendant concedes, as he must, that the findings of fact of the trial court are binding upon the appellate court if supported by competent evidence. *See, e.g., State v. Perry,* 250 N.C. 119, 124, 108 S.E.2d 447, 451, *cert. denied,* 361 U.S. 833, 4 L. Ed. 2d 74 (1959). This assignment of error is overruled.

[13]  In his next assignment of error, defendant argues that the trial court erred in admitting evidence of the murder of Deborah Henley because the evidence fails the balancing test mandated by North Carolina Evidence Rule 403. N.C.G.S. § 8C-1, Rule 403.

Evidence of Ms. Henley's murder was admitted by the trial court under Evidence Rule 404(b) to show identity, plan, and the existence of a common *modus operandi* between the two murders. Testimony indicated that both the victim in this case and Ms. Henley were last seen alive at the SRO Club. The body of each victim had similar wounds, and both victims died from strangulation. Further, a foreign object had been forced into the genitalia of both Ms. Johnson and Ms. Henley. The naked bodies of both victims were found in a rural area. A special agent of the Federal Bureau of Investigation testified that the signature to a crime is that behavior at the crime scene which is not necessary to commit the crime. That signature is a projection

of the offender's personality. In both of these murders, the signature was overkill. The murderer in both instances had inflicted far more injuries to the victim than were necessary to kill. Additionally, a pathologist testified that the wounds on both victims indicated they were beaten in a similar, brutal fashion.

Defendant does not argue that the evidence from the Henley murder is irrelevant. Instead, he contends that in light of the additional, strong evidence linking defendant to the death of Ms. Johnson, the probative value of the evidence of Ms. Henley's murder is substantially diminished and is "substantially outweighed by the danger of unfair prejudice." N.C.G.S. § 8C-1, Rule 403. During the course of the trial, testimony placed both Ms. Johnson and defendant at the SRO Club on 12 April 1991, talking and dancing together. Testimony also indicated that defendant was familiar with the area where Ms. Johnson's body was found and that he had in fact frequented the area with a former girlfriend. A serologist with the State Bureau of Investigation testified that blood was detected on defendant's clothing. The DNA analysis expert testified that DNA analyses linked defendant to the semen found inside the vagina of Ms. Johnson and that "for this particular case the chance of finding somebody else unrelated to Mr. Moseley having a similar DNA profile in the white population is approximately one in 274 million for North Carolina."

In *State v. Moseley*, 336 N.C. 710, 719, 445 S.E.2d 906, 911 (1994), we upheld the admission of evidence from Ms. Johnson's murder in the trial of defendant for the murder of Ms. Henley. Similarly, in this case, we find no error in the trial court's admission of evidence of Ms. Henley's murder in this trial. The evidence of Ms. Henley's murder was highly probative of the identity of the murderer of Ms. Johnson and of the existence of a plan and a common *modus operandi*. The trial court repeatedly gave limiting instructions to the jury explaining the limited purpose for which the evidence of Ms. Henley's murder could be considered. Circumstantial evidence of defendant's identity is admissible even though direct evidence by a witness identifies the defendant. *State v. Perry*, 275 N.C. 565, 570, 169 S.E.2d 839, 843 (1969). We conclude that the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice to defendant.

[14] Defendant next assigns error to the admission of photographs and slides during the guilt-innocence phase and the sentencing phase and to the prosecutor's use of photographs during closing arguments

in both phases of the trial. First under this assignment of error, defendant argues that he was denied his constitutional right to a fair trial by the redundant use of photographs and slides for the improper purpose of inflaming the jury. During trial, the following photographs and slides were admitted into evidence: three photographs of Dorothy Johnson (one in life and two in death); five photographs of Deborah Henley (one in life and four in death); nine autopsy slides of Ms. Johnson; and two simultaneously shown carrousels of comparative slides, twenty each of Ms. Johnson and Ms. Henley, used during the testimony of Dr. Lantz to illustrate the similarity of the wounds sustained by Ms. Johnson and Ms. Henley.

We have held that photographs may be introduced as evidence "even if they are gory, gruesome, horrible, or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). In a murder trial, photographs may be admitted "to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree." *Id.* Photographs showing the body's condition when found and the location and surrounding conditions at the time the body was found have been held admissible despite their portrayal of gruesome and horrifying events. *State v. Wynne*, 329 N.C. 507, 517, 406 S.E.2d 812, 816 (1991). The decisions of whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in light of the illustrative value of each are within the sound discretion of the trial court. An abuse of discretion results only where the court's ruling is "so arbitrary that it could not have been the result of a reasoned decision." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

We find no abuse of discretion in the admission of the photographs and slides in the case at bar. There is no evidence that the photographs were used excessively and solely to arouse the passions of the jury. *State v. Murphy*, 321 N.C. 738, 365 S.E.2d 615 (1988). Instead, the photographs and slides of Dorothy Johnson were used to identify her as the deceased and to illustrate the manner of killing in order to prove circumstantially the elements of first-degree murder. The photographs of Deborah Henley and the carrousels of slides comparing the wounds of Ms. Johnson and Ms. Henley were admitted to illustrate the State's theory that both victims were killed by the same person and that that person was defendant. Therefore, we find no merit in defendant's argument.

Defendant also argues under this assignment of error that during the testimony of Dr. Lantz, a slide of Deborah Henley's genitalia was introduced solely for the purpose of inflaming the jury and prejudicing defendant. However, the slide of Ms. Henley's genitalia was exhibited beside a slide of Ms. Johnson's genital region in order to demonstrate the similarities of the attacks on the two victims and that the same person committed both attacks. This argument is rejected.

[15] Defendant next argues under this assignment of error that the prosecutors improperly used the photographs during their closing arguments at the guilt-innocence phase for the singular purpose of inflaming the jury. Defendant also contends that during the sentencing phase, photographs of Deborah Henley were improperly used in the prosecutors' closing arguments to bolster their arguments on the issue of the "especially heinous, atrocious, or cruel" aggravating circumstance. However, defendant did not object to the prosecutors' closing arguments on either ground. We do not find the prosecutors' arguments to be so grossly improper as to constitute a denial of defendant's due process rights, requiring the trial court to intervene *ex mero motu*. *Robinson*, 330 N.C. at 31, 409 S.E.2d at 305. Absent an objection by defendant or gross impropriety sufficient to require the trial court's intervention *ex mero motu*, we find no error.

[16] Lastly, under this assignment of error, defendant argues that the trial court erred in not limiting the jury's utilization of these photographic exhibits during the sentencing phase. At the beginning of the sentencing phase, the State resubmitted all the exhibits from the guilt-innocence phase in the sentencing hearing, pursuant to N.C.G.S. § 15A-2000(a)(3). The only other evidence presented by the State at the sentencing phase was certified copies of defendant's prior felony convictions, pursuant to N.C.G.S. § 15A-2000(e)(2). The trial court did not reinstruct on the limited purposes for which the testimony and photographic exhibits resubmitted from the guilt-innocence phase could be considered.

Specifically, defendant assigns error to the trial court's failure to give a limiting instruction on the use of photographs and testimony regarding the murder of Deborah Henley in determining the existence of the "especially heinous, atrocious, or cruel" aggravating circumstance. Defendant contends that the photographs and testimony regarding Ms. Henley's murder were only relevant on the issue of the course of conduct aggravating circumstance. We agree.

We note, however, that defendant neither requested any limiting instructions nor objected to the instructions given, despite the trial court's presenting the opportunity for counsel to do so. Absent an objection at trial, defendant's claim must be reviewed under the plain error standard.

In applying the plain error standard, we have been careful to emphasize that before granting relief, the appellate court must be convinced that absent the error, the jury probably would have reached a different result. *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). The test for plain error places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon the defendant who has preserved his rights by timely objection. *Id.* Plain error is found only where the claimed error is a " 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). It is rare that an improper instruction will justify a finding of plain error sufficient to warrant a reversal of a criminal conviction. *Id.* at 661, 300 S.E.2d at 378.

In the present case, the testimony and photographic exhibits of Ms. Henley's murder were properly admitted into evidence during the sentencing phase. At sentencing, the jury is properly permitted to consider all the evidence presented during the guilt-innocence phase. N.C.G.S. § 15A-2000(a)(3) (1988); *State v. Syriani*, 333 N.C. 350, 396, 428 S.E.2d 118, 143, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied*, —— U.S. ——, 126 L. Ed. 2d 707 (1994). Furthermore, it was appropriate for the jury to consider the evidence of Ms. Henley's murder in finding the course of conduct aggravating circumstance. N.C.G.S. § 15A-2000(e)(11) (1988). We conclude that the trial court's failure to submit a limiting instruction to the jury in this case does not rise to the level of plain error entitling defendant to relief.

[17] In defendant's next two assignments of error, he argues that the trial court improperly admitted the testimony of two witnesses regarding prior acts by defendant. First, defendant argues that this evidence was irrelevant and was introduced only to show a character trait of defendant and that he acted in conformity therewith. Alternatively, defendant argues that even if the evidence has probative value, that value is slight and is substantially outweighed by the risk of unfair prejudice resulting from the admission of the evidence. The

STATE v. MOSELEY

[338 N.C. 1 (1994)]

State contends that the trial court properly admitted the evidence in question under Evidence Rule 404(b). N.C.G.S. § 8C-1, Rule 404(b).

Melissa Dawson, defendant's ex-wife, testified that during their marriage, defendant anally assaulted her with his penis and by inserting foreign objects into her rectum. This sexual conduct began in late 1989 and ended in October 1990. The trial court admitted the testimony of Ms. Dawson on the State's theory that the testimony demonstrates that there existed in the mind of the defendant a plan, scheme, or design to anally assault Ms. Johnson.

Defendant argues that the acts committed on the victim in this case are markedly dissimilar to defendant's acts committed on his ex-wife because, unlike his ex-wife, the victim in this case was a complete stranger. Therefore, the evidence lacked probative value. Even if there was probative value, it was minimal due to the remoteness in time between the assault and death of Ms. Johnson and defendant's relationship with his ex-wife. Any minimal probative value was substantially outweighed by the risk of unfair prejudice. Further, defendant argues that the prosecutor improperly elicited testimony from Ms. Dawson that defendant told her that he would ram the object as far as her throat. This statement lacked any relevancy and was elicited for inflammatory purposes only.

In addition to the purpose of proving identity, we have held in several cases that evidence of prior sexual acts may have some relevance to the issue of defendant's guilt if it tends to show a relevant state of mind such as intent, motive, plan, or opportunity. *See State v. Boyd*, 321 N.C. 574, 364 S.E.2d 118 (1988); *State v. Gordon*, 316 N.C. 497, 342 S.E.2d 509 (1986); *State v. DeLeonardo*, 315 N.C. 762, 340 S.E.2d 350 (1986). Under Rule 404(b), evidence of prior acts is admissible "so long as it is relevant to any fact or issue other than the character of the accused." *Boyd*, 321 N.C. at 577, 364 S.E.2d at 119. Nevertheless, the ultimate test for determining the admissibility of such evidence is whether the prior incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403. *State v. Cotton*, 318 N.C. at 665, 351 S.E.2d at 278-79. We hold the evidence of defendant's sexual relations with his ex-wife to be probative of defendant's state of mind at the time Ms. Johnson was sexually assaulted and murdered.

We acknowledge, as defendant points out in his brief, that there are dissimilarities between the crimes charged and defendant's con-

duct with Ms. Dawson. Ms. Dawson was not beaten or strangled, the assaults on Ms. Dawson did not occur outdoors, and Ms. Dawson was not a stranger to defendant. However, a prior act or crime is sufficiently similar under N.C.G.S. § 8C-1, Rule 404(b) to warrant admissibility if there are " 'some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes.' " *State v. Riddick*, 316 N.C. 127, 133, 340 S.E.2d 422, 426 (1986) (quoting *State v. Moore*, 309 N.C. 102, 106, 305 S.E.2d 542, 545 (1983)). It is not necessary that the similarities between the two situations "rise to the level of the unique and bizarre." *State v. Green*, 321 N.C. at 604, 365 S.E.2d at 593. Rather, the similarities must tend to support a reasonable inference that the same person committed both the earlier and later acts. *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991).

Ms. Dawson suffered repeated rectal assaults by defendant using foreign objects. The assaults on Ms. Dawson continued until only six months before Ms. Johnson's assault and murder. The trial court found, based on the expert testimony of a pathologist, that Ms. Johnson's body exhibited signs of rectal assault with a foreign object. The similarities in the sexual assaults of both Ms. Dawson and Ms. Johnson tend to support a reasonable inference that defendant committed the assaults on both women. Further, the probative value of the similarities was sufficient to outweigh the risk of unfair prejudice to defendant. The sexual assaults on Ms. Dawson were not so temporally remote to the assault and murder of Ms. Johnson as to render Ms. Dawson's testimony more prejudicial than probative.

The testimony by Ms. Dawson that defendant on one occasion told her he would ram the object until it came out of her throat was also properly admitted. Ms. Dawson testified that defendant made this statement to her when she protested his actions. The testimony was not elicited for purely inflammatory purposes. Instead, the statement also demonstrates defendant's state of mind. It shows an intent by defendant to sexually assault his victims, despite their protests to stop, and a plan to further injure his victims.

We therefore conclude that the evidence of defendant's sexual assaults on Ms. Dawson was sufficiently similar and close in time to the crimes charged in this case to warrant its admission into evidence.

[18] Defendant next argues that evidence of defendant's assault and sexual assault on Denise Fletcher in June 1989 was improperly admit-

ted by the trial court in violation of Rule 404(b) and Rule 403. The trial court admitted the evidence to show that defendant had a motive for the crime charged in this case. Defendant contends, however, that although evidence tending to establish the existence of motive is normally admissible, the State is not required to prove the motive for the murder of the victim. He argues that since motive need not be proven, the testimony of Denise Fletcher to establish motive is unduly prejudicial to defendant. Defendant also contends that there were so many dissimilarities between the assaults of Ms. Fletcher and the assault and murder of Ms. Johnson that the evidence should not have been admitted.

Denise Fletcher testified that in June 1989, she met defendant and agreed to go riding with him in his vehicle. Defendant drove the vehicle down a secluded road and stopped. He and Ms. Fletcher began talking and kissing. Defendant attempted to put his hand down Ms. Fletcher's shirt, and she protested and resisted. When Ms. Fletcher continued to refuse defendant's advances, he opened the glove compartment and brandished a gun. Defendant then ordered Ms. Fletcher to undress completely, and he undressed. He ordered Ms. Fletcher to perform fellatio on him. She refused and struggled with defendant for the gun. During the struggle, defendant pulled the trigger, and the gun fired, injuring Ms. Fletcher's finger. Defendant ordered Ms. Fletcher to wrap her finger in her underwear and get dressed. He told her he knew she would tell the authorities about him and that he would get in trouble. However, defendant took Ms. Fletcher home. The trial judge stated in his findings of fact

> that the statement . . . by the defendant to Denise Fletcher that he knew she would report the attack and then he would be in trouble[] is substantial evidence [from] which the jury could infer the defendant was particularly aware of and sensitive to the fact that any victim he assaulted might report it; that the jury could reasonably infer therefrom that such concerns provided the defendant with a motive for killing the victim in the present case.

As noted above, it is only necessary that there be sufficient similarities between the prior acts and the crimes charged to support a reasonable inference that the same person committed both the earlier and later acts. *Stager,* 329 N.C. at 304, 406 S.E.2d at 891. The trial court found from the uncontradicted evidence that the attack on Denise Fletcher and the attack on Dorothy Johnson bore several similarities: In each instance, the crime scene was a secluded and iso-

lated road; in each instance, the victim was rendered completely nude; and defendant attempted to sexually assault Ms. Fletcher and physically injured her, while Ms. Johnson was physically beaten, sexually assaulted, raped, and murdered. We find that the evidence contained sufficient similarities to the crimes charged to support a reasonable inference that the same person committed both acts. Further, the occurrences were not so temporally remote as to diminish the probative value of the evidence. Lastly, the plain language of N.C.G.S. § 8C-1, Rule 404(b) and our case law clearly support the admission of evidence of prior acts tending to show motive. *See, e.g.,* *State v. Coffey,* 326 N.C. 268, 280, 389 S.E.2d 48, 55 (1990). In the case *sub judice,* the testimony of Ms. Fletcher was properly offered to show defendant's motive for killing Ms. Johnson: From his experience with Ms. Fletcher, defendant knew that his crime would be reported to law enforcement authorities and that he would suffer the consequences if he left his victim alive. We find no error.

**[19]** Defendant next contends that the trial court erred in allowing Dr. Gregory Davis, the pathologist who performed the autopsy on Deborah Henley, the victim of the Forsyth County murder, to testify that in his opinion, Ms. Henley's wounds were torture wounds and that the number of wounds sustained by Ms. Henley was characteristic of overkill. Defendant argues that the testimony regarding whether Ms. Henley sustained torture wounds resulted in Dr. Davis testifying as to the existence of criminal intent. Further, Dr. Davis' opinion regarding overkill was paramount to him testifying to the presence of a specific intent to kill, premeditation, and deliberation. Defendant argues that because he was charged with first-degree murder on the theory of premeditation and deliberation, it was error to admit the testimony regarding torture and overkill because it constituted a relevant legal conclusion or standard. Defendant further contends that Dr. Davis' testimony regarding Deborah Henley exceeded the permissible scope of N.C.G.S. § 8C-1, Rule 404(b) and was grossly improper in this trial for the murder of Dorothy Johnson. We find no error.

Recently, in *State v. Jennings,* 333 N.C. 579, 600, 430 S.E.2d 188, 198, *cert. denied,* —— U.S. ——, 126 L. Ed. 2d 602 (1993), we held that the trial court did not err in admitting testimony by the pathologist that the victim was tortured. In so doing, we noted that the pathologist gave his expert medical opinion about the types of injuries he observed during the autopsy and did not testify that defendant had tortured the victim. *Id.* at 599, 430 S.E.2d at 198. Further, the challenged testimony in *Jennings* was merely a summation of the pattern

of injuries sustained by the victim and a medical conclusion that the pathologist was fully qualified to give. *Id.*

Similarly, in the case at bar, Dr. Davis did not testify that Ms. Henley was tortured by defendant, but merely that her injuries were consistent with torture. Like the expert in *Jennings*, Dr. Davis was fully qualified, as a pathologist, to give such an opinion.

We also stated in *Jennings* that to the extent the pathologist addressed a legal conclusion or standard,

the term "torture" is not a legal term of art which carries a specific meaning not readily apparent to the witness. "Torture" does not denote a criminal offense in North Carolina and therefore does not carry a precise legal definition as "murder" and "rape" do, involving elements of intent as well as acts.

*Id.* We conclude that the trial court did not err in allowing the testimony regarding torture.

Additionally, we find the reasoning stated in *Jennings* regarding the term "torture" equally applicable to Dr. Davis' testimony regarding "overkill." "Overkill" also is not a legal term of art and does not denote a criminal offense in North Carolina. Dr. Davis did not testify that defendant inflicted the wounds on Ms. Henley that were consistent with overkill. Instead, he merely opined that the wounds inflicted on Ms. Henley were, in his medical opinion, consistent with overkill.

Lastly, it was not grossly improper for Dr. Davis to testify as to the nature of the wounds inflicted on Ms. Henley. His testimony was well within the scope permitted under N.C.G.S. § 8C-1, Rule 404(b). The injuries sustained by Ms. Henley, which Dr. Davis opined were indicative of torture and overkill, were remarkably similar to the injuries sustained by Dorothy Johnson. Special Agent Gregory Cooper of the FBI testified that overkill was the signature present in the murders of both Ms. Henley and Ms. Johnson. Therefore, the testimony at issue was relevant in establishing the identity of the perpetrator of the murder of Ms. Johnson and thus was properly admitted.

We hold that the trial court did not err by allowing this testimony. This assignment of error is therefore overruled.

[20] At the close of the State's evidence, defendant moved to dismiss all the charges against him. Defendant chose to not present any evidence, and at the close of all the evidence, defendant renewed his motion to dismiss all charges. These motions were denied. Defendant

argues in his next assignment of error that the trial court erred in failing to dismiss the first-degree rape charge because there was not substantial evidence to support a reasonable inference that vaginal intercourse took place by force and against the will of the victim.

We stated in *State v. Olson*, 330 N.C. 557, 411 S.E.2d 592 (1992):

> On a defendant's motion for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). What constitutes substantial evidence is a question of law for the court. *Id.* To be "substantial," evidence must be existing and real, not just "seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Vause*, 328 N.C. at 236, 400 S.E.2d at 61. In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *Id.*

*Id.* at 564, 411 S.E.2d at 595.

With this framework in mind, we turn to the merits of defendant's contention. The offense of first-degree rape occurs when a person engages in vaginal intercourse with another person by force and against the will of the other person and inflicts serious personal injury upon the other person. N.C.G.S. § 14-27.2 (1993). The element "by force and against the will of the other person" does not require actual physical force. Fear, fright, or duress may take its place. *State v. Hall*, 293 N.C. 559, 561, 238 S.E.2d 473, 475 (1977).

In the case *sub judice*, the evidence reasonably supports the inference that the victim had vaginal intercourse with defendant by force and against her will. Defendant concedes that the pathologist found sperm in Ms. Johnson's vagina. However, defendant contends that the evidence tends to show that Ms. Johnson left the SRO Club voluntarily with defendant. Absent evidence of a forcible abduction, the fact that Ms. Johnson was later murdered raises no more than a conjecture that any sexual conduct between defendant and her was

nonconsensual. While the evidence may support defendant's argument, it also is clearly sufficient to reasonably support the inference that defendant forcibly, and against the will of Ms. Johnson, engaged her in sexual intercourse. Ms. Johnson's body was severely beaten. Testimony indicated that she was alive during the beating. The jury could reasonably infer from this evidence that Ms. Johnson was forced, both physically and by fear and intimidation, to have sexual intercourse with defendant against her will. Any possible discrepancies in the evidence are for the jury to resolve. *Id.*

The trial court did not err in failing to dismiss the first-degree rape charge.

SENTENCING PHASE

Defendant next argues that the trial court erred in not intervening in several portions of the prosecutors' closing arguments during the sentencing phase. We address each of defendant's contentions individually.

Defendant did not object to the portions of the arguments to which he first assigns error. Therefore, "review [of these arguments] is limited to an examination of whether the argument[s] [were] so grossly improper that the trial court abused its discretion in not intervening *ex mero motu.*" *State v. Quesinberry,* 325 N.C. 125, 140, 381 S.E.2d 681, 690 (1989) (quoting *State v. Gladden,* 315 N.C. 398, 417, 340 S.E.2d 673, 685, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986)), *sentence vacated on other grounds,* 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand,* 328 N.C. 288, 401 S.E.2d 632 (1991).

[21] First, defendant argues that the prosecutor repeatedly argued, without objection, that the mitigating circumstances submitted by defendant were in fact to be considered by the jury as aggravating circumstances because defendant, by killing Dorothy Johnson, denied her the right to submit the same mitigating circumstances. Defendant contends that the following excerpts demonstrate the egregious nature of the prosecutors' arguments in this regard:

You talk about mitigating circumstances. You talk about mitigating circumstances.

Look at it, ladies and gentlemen of the jury. I don't never [sic] want you to forget while you're back there in that jury room. She wanted to live just as much as you and I do today. And yet look what happened to her.

Who decided what happened to her? You talk about mitigating circumstances? Life is mitigating circumstances, ladies and gentlemen of the jury. These mitigating circumstances that they want you to consider here, these things here that they want you to think about and consider, every one of those mitigating circumstances he took from that woman.

The prosecutor then addressed specifically each mitigating circumstance submitted by defendant:

Because, you see, ladies and gentlemen of the jury, is the age of the defendant at the time of this murder a mitigating factor? What about her age? He took it away from her. And how did he take it away from her? And for what did he take it away, ladies and gentlemen of the jury? He took it for an eternity. Forever more.

. . . .

Now, let's read them again. Is the age of the defendant at the time of this murder a mitigating factor? Is it? Was her age a mitigating factor? Didn't she have an age too?

. . . .

You don't think, ladies and gentlemen of the jury, that that woman wouldn't like to have a little boy like this [referring to defendant's son]? You don't think that that woman wouldn't have wanted this? You don't think that she wouldn't have screamed out, let me live long enough to have something like this, something as precious as this is.

. . . .

Next one, is the defendant a loving father to his son? You don't think this woman wouldn't have been loving to a child if he had given her a chance to have one?

. . . .

Is the defendant considerate and loving to his mother, father and sister? Did she not have that mitigating factor? You saw her parents. Do you not believe this woman—you can see by her picture she's been through nine operations, nine operations. And yet she still has trouble eating is why she is so small, and trouble with her speech. You don't think that she was considerate and thankful of her parents for trying to correct that problem she had? You

don't think she wasn't considerate and loving to her mother and father when she lived that kind of life under those circumstances?

. . . .

. . . How dare Carl Stephen Moseley say he has mitigating circumstances. How dare him say that.

Here is the woman with mitigating circumstances. All she wanted to do was live and enjoy some life, and have a relationship with somebody like this maybe sometime in her life. Or be able to write to a man as Carl Stephen Moseley got to receive from a loving wife, letters that say, I love you . . . .

We disagree with defendant's interpretation of these arguments. On appeal, particular prosecutorial arguments are not viewed in an isolated vacuum. *State v. Pinch,* 306 N.C. 1, 24, 292 S.E.2d 203, 221, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied,* 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983). "Fair consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred." *Id.* A review of the excerpted arguments in context reveals that the prosecutors were in essence arguing that the mitigating circumstances proffered by defendant had little value when compared to the circumstances of defendant's crime and his character. We do not find these remarks so egregious as to require intervention by the trial court *ex mero motu.*

[22] Defendant next contends that the prosecutors improperly implied, albeit without objection by defendant, that mitigating circumstances must justify or excuse a killing or reduce it to a lesser degree of crime. We agree that such an argument would be improper, and it may, depending upon the circumstances, even rise to the level of prejudicial error. However, after a careful review of the transcript, we find no such grossly improper arguments by the prosecutors in this case.

[23] Defendant also asserts that the prosecutors improperly argued that "[i]t's time we do something for the victims. It's time we do something for the Dorothy Louise Johnsons of this world." However, we have held repeatedly that brief references to victims or their families during prosecutors' closing arguments do not rise to the level of gross impropriety necessary to warrant the trial court's intervention *ex mero motu. See State v. McNeil,* 324 N.C. 33, 48, 375 S.E.2d 909, 918 (1989) (finding no gross impropriety in the prosecutor's statement that he represented the victim), *sentence vacated on other grounds,*

494 U.S. 1050, 108 L. Ed. 2d 756, *on remand*, 327 N.C. 328, 395 S.E.2d 106 (1990), *cert. denied*, 499 U.S. 942, 113 L. Ed. 2d 459 (1991); *State v. Covington*, 290 N.C. 313, 328, 226 S.E.2d 629, 640 (1976) (finding no gross impropriety in the prosecutor's statement that "everybody is concerned about the rights of the defendants . . . . When in God's name are we going to start getting concerned about the rights of the victims?"). The prosecutors' isolated statements in this case did not warrant the trial court's intervention *ex mero motu*.

[24] Next, defendant claims that the following arguments by the prosecutors were improper because they went outside the record and appealed to the jury to convict defendant because of public sentiment:

> You are justice. The eyes of Stokes County are on you. You[] are the conscience of our justice system. You are that justice system. What will you do with Carl Stephen Moseley, a multiple killer?
>
> . . . .
>
> It's time we say, it's time for this jury to send a message to the community.
>
> [DEFENDANT]: Objection.
>
> THE COURT: Objection overruled.
>
> [PROSECUTOR]: What will your verdict be? Send a message to them that this kind of thing can't be tolerated. That this kind of thing can't be done and just let go.
>
> . . . .
>
> You[] are the moral conscience of this community. I ask you to send a message.
>
> [DEFENDANT]: Objection.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: The eyes of the community are upon you. Why is this case less deserving of [the] extreme punishment of death? I can't think of a single reason why. I can't think of a single true mitigating circumstance that would save his life under any circumstances.
>
> . . . .

. . . Do something about it. Don't throw away a life like an old shoe. That's what's wrong with this country.

[DEFENDANT]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: That's what's wrong with this system. It's time we did something. It's time we had the back bone and the courage to do what's the right thing.

[DEFENDANT]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: Sometimes it's the hard thing. In these hot seats that you sit in now I understand it's not easy.

. . . .

I won't ask you to take his life. But I will tell you this, ladies and gentlemen of the jury, that somewhere, somewhere when this trial is over you're going to go down to the country store, or you're going to go to church, or the golf course, or go anywhere where people gather, and you know what you're going to hear? You're going to hear these words, or something to this effect—

[DEFENDANT]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: You're going to hear, did you hear what they did in Danbury in that poor girl, Dot Johnson's case?

[DEFENDANT]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: And you know something, ladies and gentlemen of the jury? All the lawyers in the world can suggest to you how you are going to answer that question. But only you can fill in the blanks. You were told that this case was a puzzle. But, ladies and gentlemen of the jury, the puzzle has been solved. It will be up to you to answer the question. Did you hear what they did down in Danbury? You are the voice. You are the conscience of the community.

Defendant argues that this type of argument is prejudicial because it reminded the jurors that they needed to heed the senti-

ments of the community because they would have to return to the community and explain their verdict. In *State v. Scott*, 314 N.C. 309, 312, 333 S.E.2d 296, 298 (1985), we held that the prosecutor's argument to the jury was improper because it asked the jury to decide the case on the basis of public sentiment. However, in *Scott*, the Court emphasized that it was not improper for the prosecutor to remind the jury that people often say, "My God, they ought to do something about [drunk driving]. . . . Well, ladies and gentlemen, the buck stops here. You twelve judges in Cumberland County have become the 'they.' " *Id.* at 311, 333 S.E.2d at 297. These statements asked the jury only to act as the voice and conscience of the community, which is not improper. The prosecutor in *Scott* fell into improper argument only in pointing out to the jury specifically that "there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway." *Id.* at 312, 333 S.E.2d at 298. This statement was improper because it went outside the record and appealed to the jury to convict the defendant because drunk drivers had caused other accidents. *Id.*

We find the arguments at issue here to be analogous to the statements in *Scott* that were held to be proper. The prosecutors in the case *sub judice* were not asking the jurors to decide the verdict based on community sentiment. Rather, the prosecutors were merely reminding the jurors that, like it or not, they were the jurors in that case, and as such, they would be the voice and conscience of the community. "We have upheld arguments by prosecutors suggesting to juries that they are the 'voice and conscience of the community' and that they have an obligation to do something about serious crime." *State v. McNeil*, 324 N.C. at 53, 375 S.E.2d at 921. Therefore, we find no error.

[25] Defendant contends by another assignment of error that the trial court erred in never affording defendant the opportunity to speak to the sentencing jury after granting his motion for allocution. However, we have recently held that a defendant does not have a constitutional, statutory, or common law right to make unsworn statements of fact to the jury at the conclusion of a capital sentencing proceeding. *State v. Green*, 336 N.C. 142, 443 S.E.2d 14 (1994). Although the trial court indicated to defendant prior to jury selection that the "allocution right will be afforded, but must be exercised before arguments of counsel at any sentencing hearing," after the charge conference at sentencing, the following occurred:

THE COURT: All right. At this time the defendant is present in court with his attorneys, and the Issues and Recommendation form has been finalized. And are we now ready to argue to the jury, counsel?

[PROSECUTOR]: Yes. State's ready.

THE COURT: Defendant ready?

[DEFENDANT]: We have one brief motion we'd like [you] to hear.

THE COURT: All right, sir.

The court then heard defendant's motion to "preclude improper argument by the prosecutor." Thus, when given the opportunity at the appropriate stage of the proceedings, defendant failed to remind the trial court of his wish to allocute. Since defendant does not have a constitutional, statutory, or common law right to allocution and since defendant failed to remind the court of his desire to speak to the jury at the appropriate stage of the case, we conclude that there was no error.

[26] In his next assignment of error, defendant argues that the trial court should not have permitted the jury to find as separate statutory aggravating circumstances that defendant had previously been convicted of assault with a deadly weapon inflicting serious injury, a felony involving the use or threat of violence to the person, and that defendant had previously been convicted of attempted second-degree sexual offense, a felony involving the use or threat of violence to the person. N.C.G.S. § 15A-2000(e)(3) (1988). Defendant contends that both convictions arose from his conduct against Denise Fletcher and that he pled guilty to the related charges at the same time and received a consolidated sentence. According to defendant, the submission of two aggravating circumstances based on this course of conduct was redundant. He argues that if more than one conviction or enumerated offense were found by the jury, this should go to the weight given to the aggravating circumstance, rather than a finding of the same statutory aggravating circumstance twice. We do not agree.

Aggravating circumstances are not considered redundant absent a complete overlap in the evidence supporting them. *State v. Sanderson*, 336 N.C. 1, 21, 442 S.E.2d 33, 45 (1994); *State v. Jennings*, 333 N.C. at 628, 430 S.E.2d at 214. In the case at bar, the evidence underlying the submission of the two aggravating circumstances was

not the same. Defendant was convicted of committing two separate offenses against Denise Fletcher. Each offense was supported by distinct evidence. The attempted second-degree sexual offense was supported by evidence that defendant, while brandishing a gun, attempted to force Ms. Fletcher to perform fellatio on him. The assault offense was supported by evidence that defendant injured Ms. Fletcher's hand when she and defendant struggled for his gun, and he fired it. Any overlap in the evidence supporting the two convictions was slight and certainly did not rise to the level of complete redundancy. Therefore, we find no error.

[27] Also under this assignment of error, defendant raises a similar argument as to the trial court's instructions to the jury that it could consider as two separate aggravating circumstances that the murder was committed while defendant was engaged in the commission of first-degree sexual offense and that the murder was committed while defendant was engaged in the commission of first-degree rape against Dorothy Johnson. N.C.G.S. § 15A-2000(e)(5) (1988). However, again, the submission of both aggravating circumstances was supported by distinct and separate evidence. The first-degree sexual offense was supported by evidence that defendant penetrated Ms. Johnson's rectum with a foreign object. The first-degree rape was supported by evidence that defendant penetrated Ms. Johnson's vagina. Further, the elements of first-degree sexual offense and first-degree rape are different. See N.C.G.S. §§ 14-27.4, -27.2 (1993). Defendant committed two separate crimes. The only overlap between the two convictions was that defendant committed both crimes against the same victim, and the evidence did not overlap to the point of redundancy. Accordingly, each crime supported the submission of a separate aggravating circumstance. This assignment of error is overruled.

[28] Defendant next assigns error to the trial court's failure to give limiting instructions on the aggravating circumstances during the sentencing phase. The trial court erred in not instructing the jury that it could not consider the same evidence to find more than one aggravating circumstance. However, defendant neither objected to the instructions given nor requested limiting instructions. Therefore, defendant's claims must be reviewed under the plain error standard.

First, defendant contends that the trial court failed to instruct the jury that the evidence of defendant's convictions for attempted second-degree sexual offense and for assault with a deadly weapon inflicting serious injury against Denise Fletcher, which supported the

two aggravating circumstances that defendant had been convicted of felonies involving the use or threat of violence to the person, could not be considered by the jury in determining whether the murder was part of a course of conduct in which defendant engaged and which included the commission of other violent crimes against other persons. Second, defendant argues that the trial court failed to instruct the jury that evidence that defendant raped and sexually assaulted Dorothy Johnson, which supported the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a first-degree rape and the aggravating circumstance that the murder was committed while defendant was engaged in the commission of a first-degree sexual offense, could not be considered in finding either the especially heinous, atrocious, or cruel aggravating circumstance or the course of conduct aggravating circumstance.

While the trial court should have instructed the jury that it could not use the same evidence as the basis for finding more than one circumstance, we do not believe that if the jury had been so instructed, the result would have been different. There was clearly sufficient, independent evidence to support each of the aggravating circumstances in question. Over half the evidence introduced in this proceeding dealt with the murder of Deborah Henley. This evidence does not overlap in any way with the evidence of defendant's assault and attempted sexual assault of Denise Fletcher or with the evidence of defendant's sexual offense or rape of Dorothy Johnson. Furthermore, the evidence demonstrated that the murder of Deborah Henley was dramatically similar to the murder of Dorothy Johnson. This evidence was admitted during the guilt-innocence phase expressly for the purpose of demonstrating to the jury that defendant had a plan, scheme, or *modus operandi* in committing the two murders. There existed, therefore, plenary evidence from which the jury could properly find the course of conduct aggravating circumstance. Additionally, there was a wealth of evidence, independent of evidence of defendant's rape or sexual assault of Ms. Johnson, to support the especially heinous, atrocious, or cruel aggravating circumstance. The evidence showed that Ms. Johnson was severely beaten from head to toe, was cut repeatedly with a sharp object, and was strangled to death, both manually and ligaturally. The evidence also showed that Ms. Johnson would have been conscious during the time she suffered the beating. Further, testimony indicated that death by strangulation would have been frightening and that it would have taken between one and five minutes for Ms. Johnson to die. We thus decline to find

plain error in the trial court's failure to give limiting instructions. This assignment of error is overruled.

PRESERVATION ISSUES

Defendant raises four additional issues that he concedes this Court has decided against his position.

[29] First, defendant argues that the trial court erred in instructing the jury in the penalty phase that, as to issue three of the issues and recommendation form, the jury was to continue to issue four if the mitigating circumstances were of equal weight to the aggravating circumstances. This argument was directly addressed by this Court and answered against defendant's position in *State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand*, 330 N.C. 501, 411 S.E.2d 806, *cert. denied*, —— U.S. ——, 120 L. Ed. 2d 913 (1992). We find no compelling reason to depart from our prior holding. Therefore, this assignment of error has no merit.

[30] Second, defendant contends that the trial court erred in submitting the aggravating circumstance that the murder was especially heinous, atrocious, or cruel because that aggravating circumstance is unconstitutional on its face and as applied. We have recently decided that this aggravating circumstance is not unconstitutional on its face. *State v. Syriani*, 333 N.C. at 388-92, 428 S.E.2d at 139. We further hold that the aggravating circumstance is not unconstitutional as applied in this case and that there was sufficient evidence to warrant submitting the circumstance to the jury. This assignment of error is overruled.

[31] Third, defendant argues that the course of conduct aggravating circumstance, N.C.G.S. § 15A-2000(e)(11) (1993), is unconstitutional. However, defendant admits that this Court has rejected this argument. *State v. Williams*, 305 N.C. 656, 292 S.E.2d 243 (1982). While defendant argues that the trial court's instructions in this case were less precise than those upheld in *Williams* because the trial court here failed to limit the evidence that could be considered in support of this aggravating circumstance, we still find *Williams* controlling. This argument is without merit.

[32] Fourth, defendant argues that the trial court erred in denying defendant's request to argue parole eligibility and to present evidence of the same to the jury. This Court has established a policy of prohibiting information concerning parole in capital cases. *State v.*

*Robbins,* 319 N.C. 465, 518, 356 S.E.2d 279, 310, *cert. denied,* 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Recently, we have declined to abandon our prior authority on this issue, despite the legislature's amendment of N.C.G.S. § 15A-2002 to require the trial court, in cases of offenses occurring on and after 1 October 1994, 1994 N.C. Extra Sess. ch. 24, § 14(b), to instruct the jury during a capital sentencing proceeding concerning parole eligibility of a defendant sentenced to life without parole, 1993 N.C. Sess. Laws ch. 538, § 29. *Green,* 336 N.C. at 157, 443 S.E.2d at 23. Therefore, we reject this argument.

PROPORTIONALITY REVIEW

[33] Finding no error in either the guilt-innocence phase or the capital sentencing proceeding, it is now the duty of this Court to review the record and determine (1) whether the record supports the jury's finding of the aggravating circumstances upon which the sentencing court based its sentence of death; (2) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (1988).

The following aggravating circumstances were submitted to the jury:

(1)    Had the defendant been previously convicted of the felony of assault with a deadly weapon inflicting serious injury being a felony involving the use or threat of violence to the person? [N.C.G.S. § 15A-2000(e)(3) (1988).]

. . . .

(2)    Had the defendant been previously convicted of the felony of attempted second degree sexual offense being a felony involving the use or threat of violence to the person? [*Id.*]

. . . .

(3)    Was this murder committed while the defendant, Carl Stephen Moseley, was engaged in the commission of a first degree sexual offense? [N.C.G.S. § 15A-2000(e)(5) (1988).]

. . . .

(4)    Was this murder committed while the defendant, Carl Stephen Moseley, was engaged in the commission of a first degree rape? [*Id.*]

**STATE v. MOSELEY**

[338 N.C. 1 (1994)]

. . . .

(5) Was this murder especially heinous, atrocious, or cruel? [N.C.G.S. § 15A-2000(e)(9) (1988).]

. . . .

(6) Was the murder for which the defendant stands convicted part of a course of conduct in which the defendant Carl Stephen Moseley engaged in the commission of other crimes of violence against another person or persons? [N.C.G.S. § 15A-2000(e)(11) (1988).]

The jury responded "yes" to each of these inquiries, thus finding these aggravating circumstances to exist. We have previously concluded herein that each of these aggravating circumstances was readily supported by the evidence.

After conducting a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we further conclude that the jury did not sentence defendant to death while under the influence of passion, prejudice, or any other arbitrary factor.

Our final duty is to determine whether the punishment of death in this case is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

As this Court has frequently noted, the purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. at 164-65, 362 S.E.2d at 537. Proportionality review is necessary to serve "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137, *reh'g denied*, 448 U.S. 918, 65 L. Ed. 2d 1181 (1980). In conducting proportionality review, we "determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant." *State v. Brown*, 315 N.C. 40, 70, 337 S.E.2d 808, 829 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988).

We begin our analysis by comparing the instant case with those seven cases in which this Court has determined that the sentence of death was disproportionate: *State v. Benson*, 323 N.C. 318, 372 S.E.2d

517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

In *State v. Benson*, the defendant was convicted of first-degree murder based solely upon the theory of felony murder; the victim died of a cardiac arrest after being robbed and shot in the legs by the defendant. The only aggravating circumstance found by the jury was that the crime was committed for pecuniary gain. This Court determined that the death sentence was disproportionate based in part on the fact that it appeared defendant was simply attempting to rob the victim, 323 N.C. at 329, 372 S.E.2d at 523, and defendant "pleaded guilty during the trial and acknowledged his wrongdoing before the jury." *Id.* at 328, 372 S.E.2d at 523.

In *State v. Stokes*, the defendant was one of four individuals who was involved in the beating death of a robbery victim. Defendant was found guilty of first-degree murder under the theory of felony murder, and only one aggravating circumstance was found, that the crime was especially heinous, atrocious, or cruel. This Court, in finding that the death sentence was disproportionate, noted that none of the defendant's accomplices were sentenced to death, although they committed the same crime in the same manner. 319 N.C. at 27, 352 S.E.2d at 667.

In *State v. Rogers*, the defendant was convicted of first-degree murder based on a shooting of the victim in a parking lot during an argument. Only one aggravating circumstance was found, that "[t]he murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons." 316 N.C. at 234, 341 S.E.2d at 731.

In *State v. Young*, the defendant stabbed and robbed a man. The Court noted that in armed robbery cases where death is imposed, the jury has found the aggravating circumstance that the defendant was engaged in a course of conduct that included the commission of violence against another person and/or that the crime was especially heinous, atrocious, or cruel. 312 N.C. at 691, 325 S.E.2d at 194. Neither of these circumstances was found by the jury in *Young*.

In *State v. Hill,* the defendant shot a police officer while engaged in a struggle near defendant's automobile. This Court found the death sentence disproportionate because of

> the somewhat speculative nature of the evidence surrounding the murder here, the apparent lack of motive, the apparent absence of any simultaneous offenses, and the incredibly short amount of time involved, together with the jury's finding of three mitigating circumstances tending to show defendant's lack of past criminal activity and his being gainfully employed, and the unqualified cooperation of defendant during the investigation . . . .

311 N.C. at 479, 319 S.E.2d at 172.

In *State v. Bondurant,* the defendant shot his victim after defendant had spent the night drinking; there was no motive for the killing, and immediately after the victim was shot, defendant made sure the victim was taken to the hospital. 309 N.C. at 694, 309 S.E.2d at 182-83.

In *State v. Jackson,* the victim had been shot twice in the head. The defendant had earlier flagged down the victim's car, telling his companions that he intended to rob the victim. This Court found the death sentence disproportionate because there was "no evidence of what occurred after defendant left with McAulay [the victim]," and there was no evidence to show that the murder was "especially heinous" within the meaning of the statute. 309 N.C. at 46, 305 S.E.2d at 717.

We conclude that this case is not similar to any of the above cases, where death was found to be a disproportionate sentence. Most notably, in none of the cases where the death sentence has been determined to be disproportionate did the sentencing jury find as many aggravating circumstances as were found by the jury in this case. Indeed, our research has revealed no cases in which the sentencing jury has found six aggravating circumstances to exist. Furthermore, we conclude that the murder in this case was more brutal and torturous than those cases where we have found the death penalty to be disproportionate. Of the cases in which this Court has found the death penalty disproportionate, only two involved the especially heinous, atrocious, or cruel aggravating circumstance. *Stokes,* 319 N.C. 1, 352 S.E.2d 653; *Bondurant,* 309 N.C. 674, 309 S.E.2d 170. *Stokes* and *Bondurant* are not similar to the instant case. In this case, defendant offered companionship to a small, trusting woman but then took her to a secluded place, where he sexually assaulted her; raped

her; and brutally beat, tortured, stabbed, and strangled her until she was dead.

In reviewing the proportionality of a sentence, it is also appropriate for us to compare the case before us to other cases in the pool used for proportionality review. *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). However, we "will not undertake to discuss or cite all of those cases" we have reviewed. *State v. McCollum*, 334 N.C. 208, 244, 433 S.E.2d 144, 164 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895, *reh'g denied*, —— U.S. ——, —— L. Ed. 2d ——, 1994 WL 459889 (1994). In examining the pool, we review cases with similar facts and with similar aggravators and mitigators.

Here, defendant was convicted of first-degree murder on the theory of premeditation and deliberation. As noted earlier, the jury found the existence of the six aggravating circumstances submitted in this case. The jury also found two of the eight submitted nonstatutory mitigating circumstances to exist. The mitigating circumstances found were: that defendant is considerate and loving to his mother, father, and sister and that defendant was cooperative with law enforcement officers in not resisting arrest and voluntarily assisting in the search of his bedroom at his parents' house. The following circumstances were submitted to the jury but not found: the age of defendant at the time of the murder, N.C.G.S. § 15A-2000(f)(7) (1988); that defendant was a loving father to his son; that defendant has been a productive member of society having sought education and consistently been gainfully and responsibly employed; that defendant sought to exert a good religious influence on the life of his son; that the offense is out of character for defendant; and the catchall mitigating circumstance, N.C.G.S. § 15A-2000(f)(9) (1988).

We begin our comparison of this case to others in the proportionality pool by noting, as we have before, that " 'juries have tended to return death sentences in murder cases where the defendant also sexually assaulted his victim.' " *State v. Artis*, 325 N.C. 278, 340, 384 S.E.2d 470, 505 (1989) (quoting *State v. Holden*, 321 N.C. at 167, 362 S.E.2d at 538), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). While we do not rely on statistics alone, a comparison of this case to other cases involving sexual assaults where we have held the death sentence proportionate reveals that the death penalty is an appropriate sentence in this case.

Recently, we affirmed the death penalty in a case similar to the one at bar. In *State v. Sexton*, 336 N.C. 321, 444 S.E.2d 879 (1994), the defendant strangled the victim after raping and sexually assaulting her. Testimony indicated that, like the victim in this case, it would have taken several minutes for the victim in *Sexton* to die from strangulation. *Id.* at 373, 444 S.E.2d at 909. The jury found three statutory aggravators, two of which were also found in this case: that the murder was committed while defendant was engaged in the commission of a first-degree rape, first-degree sexual offense, first-degree kidnapping, and common-law robbery, N.C.G.S. § 15A-2000(e)(5); that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and that the murder was committed for the purpose of avoiding or preventing a lawful arrest, N.C.G.S. § 15A-2000(e)(4). The jury also found nineteen of the twenty-seven nonstatutory mitigating circumstances submitted.

Also, in *State v. Rose*, 335 N.C. 301, 439 S.E.2d 578, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994), we upheld the death penalty where the victim died as the result of sharp trauma and blunt force trauma to the head, as well as manual strangulation. Additionally, there was evidence of several incised wounds on the victim's body which were inflicted prior to death. The body was burned after death. In *Rose*, the jury found two aggravating circumstances: that the defendant had been previously convicted of a felony involving the use or threat of violence to the person and that the murder was especially heinous, atrocious, or cruel. The jury found none of the statutory mitigating circumstances submitted but found all nine of the nonstatutory mitigating circumstances.

In both *Sexton* and *Rose*, evidence indicated that the female victim was alone and vulnerable. There was evidence that both victims survived their initial wounds, that their injuries were painful, and that they remained conscious for a period of time prior to death. We find this case to be factually strikingly similar to *Sexton* and *Rose*. Further, however, unlike the juries in *Sexton* and *Rose*, which recommended death despite finding a number of mitigating circumstances, the jury in this case declined to find most of the mitigating circumstances submitted by defendant.

We also note that defendant has already been convicted and sentenced to death for the similar first-degree murder of Deborah Henley, and that sentence has been affirmed by this Court. *State v. Moseley*, 336 N.C. 710, 445 S.E.2d 906.

We have upheld the death penalty in many of the cases where the jury has found that the murder was especially heinous, atrocious, or cruel. *See Artis*, 325 N.C. at 341, 384 S.E.2d at 506. The proportionality "pool also includes numerous affirmed death penalty cases in which the jury found that the defendant had previously been convicted of a felony involving the use of violence." *Id.* at 341-42, 384 S.E.2d at 506. While the presence of these aggravators is not determinative, it is an indication that the imposition of the death sentence was neither excessive nor arbitrary. We have never found to be disproportionate any sentence of death where the defendant has been convicted of multiple murders. We are convinced that based on the characteristics of this defendant and the crimes he committed, the death sentence imposed was not excessive or disproportionate.

In summary, we have carefully reviewed the transcript of the trial and sentencing proceeding as well as the record and briefs and oral arguments of counsel. We have addressed all of defendant's assignments of error and conclude that defendant received a fair trial and a fair sentencing proceeding free of prejudicial error before an impartial judge and jury. The conviction and the aggravating circumstances are fully supported by the evidence. The sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor and was not disproportionate.

NO ERROR.